# Staunton

## TYREE v. HARRISON.

### September 18, 1902.

1. LIBEL—*Privileged Communications—Province of Court and Jury—
   Malice.*—In an action of libel it is for the court to determine what
   communications are privileged, but it is the province of the jury to
   determine whether the privilege has been used in good faith, and
   without malice. Ordinarily malice may be implied from the publica-
   tion of defamatory matter, but if the occasion of the publica-
   tion is privileged, malice will not be implied, and the burden is on
   the plaintiff to prove malice in fact. Strong and violent language,
   however, disproportioned to the occasion, may overcome the weight
   of the privilege and raise an inference of malice.

2. LIBEL—*Privileged Communications—Misconduct of Policeman—Letter to
   Mayor.*—A letter from a citizen to the mayor of a city informing
   him of alleged misconduct of a policeman is a privileged communi-
   cation.

3. NEW TRIALS—*Conflicting Evidence—Weight Attached to Verdict.*—While
   some latitude must be allowed to the discretion of a trial judge in
   passing upon a motion to set aside a verdict because contrary to the
   evidence, still the verdict is entitled to great respect, and should
   not be disturbed unless plainly against the evidence. It is the
   province of the jury to pass upon the credibility of witnesses and
   the weight of the evidence, and where, as in this case, there is se-
   rious conflict in the evidence the verdict should not be disturbed.

Error to a judgment of the Circuit Court of the city of Roa-
noke, rendered December 1, 1900, in an action of trespass on the
case wherein the plaintiff in error was the plaintiff, and the de-
fendant in error was the defendant.

*Reversed.*

The opinion states the case.

*Scott & Staples,* for the plaintiff in error.

*Cocke & Glasgow,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

H. W. Harrison addressed the Mayor of the city of Roanoke the following letter:

"Hon. JAMES P. WOODS:

"Dear Sir,—I respectfully call your attention to the fact that a policeman named Peter R. Tyree came into my office to-day, and from his insolence and coarseness seemed to be under the influence of liquor of some kind. He summoned me to Police Court, as he said, because my horse got his front feet on sidewalk.

"He lied by saying that people complained of it, and when I questioned him as to the complainants he confessed to an untruth. I at once removed my horse to the stable, though of great inconvenience to me, on account of my peculiar class of work, as you must know.

"He was angry from some cause, and was very rude in his manners. I have seen no such brutality exhibited without cause by any other policeman, and such creatures should be in some other position, and not take their spite out on gentlemen, as I certainly violated no law to my knowledge and will. He is a low-bred, vulgar man, and surely unacquainted with his duties, or over-rides them.

"Respectfully,

"Your Obt. Svt.,

"H. W. HARRISON."

A few days thereafter Tyree brought suit against Harrison, and upon the trial the jury gave him a verdict of $1,000. This

verdict was, upon motion of the defendant, set aside, to which action of the court the plaintiff filed his bill of exception. At another day, the case was submitted to the court without a jury, and a judgment was rendered for the defendant. Thereupon Tyree obtained a writ of error from one of the judges of this court, and the error assigned is that the court should have rendered a judgment for the plaintiff upon the verdict of the jury.

There is no doubt that the letter which was addressed to the Mayor is a privileged communication. It is not only the right, but the duty, of the citizen to make complaint of any misconduct upon the part of officials to those charged with the supervision over them, and it is for the court to say what communications are privileged, and for the jury to determine whether or not the privilege has been abused.

As was said by Judge Lewis in *Strode* v. *Clement*, 90 Va. 556: "Ordinarily the law implies malice from the use of words defamatory or insulting. But the presumption is the other way, where the occasion of the publication is privileged, and the *onus* is then upon the plaintiff to prove malice in fact. Where the defendant acts in performance of a duty, legal or social, or in defence of his own interests, the occasion is privileged. . . . . But the question of good faith, belief in the truth of the statement, and the existence of actual malice remains for the jury." *Klinck* v. *Kolby*, 46 N. Y. 427.

In the same case it is said "that strong or violent language disproportioned to the occasion may raise an inference of malice, and thus lose the privilege that would otherwise attach to it."

These principles were embodied in the instructions given to the jury in the case under consideration. The court told the jury that the communication which was the foundation of the action was privileged, and left it to the jury to say whether the privilege had been used in good faith, and without malice.

The principal witnesses were the parties themselves. Tyree's account of what was said and done by him upon the occasion of

his visit to Harrison's office, which called forth the letter of August 10, is that he waited upon Dr. Harrison, in the discharge of his duty, and informed him that his horse was standing upon the sidewalk, in violation of one of the ordinances of the city; that he treated him with politeness, courtesy, and respect; that he was guilty of no rudeness of manner or language; that he did not threaten to arrest him, but merely notified him to appear before the Police Court.

Dr. Harrison's account of this interview is substantially a re-production of what appears in his letter. He says that Tyree's first remark was that he would have to arrest him because every-body was complaining about his horse upon the sidewalk, and that he was tired running after him; that his face was red, and his manner violent, vulgar, coarse, and brutal.

Immediately after this interview Dr. Harrison went to the office of the Mayor to make complaint, but did not find him, and during the afternoon he met with Tyree upon the street, and some conversation took place between them, in which Harrison demanded to know who had lodged a complaint against him, to which, Tyree says, he replied: "I told him that complaint had been made. He insisted on my telling who it was. I did not tell him on account of the condition he was in—mad; I did not want him to go back to see Mr. Greene. I said you saw your horse on the sidewalk, and I saw it on the sidewalk." It may be as well to state that the Mr. Greene here alluded to was the owner of the premises in front of which the horse was found, and from whom Tyree ascertained that it belonged to Dr. Harrison. The letter, it will be recalled, states that "he lied by say-ing that people complained of it, and when I questioned him as to the complaints he confessed to an untruth." This charge is based upon the interview in the street in the afternoon to which we have just alluded, and in which Tyree states that he refrained from informing Dr. Harrison of what had occurred, because, as he says: "I did not want him to go back to see Mr. Greene."

In other words, Tyree did not wish to bring about a difficulty between these two gentlemen.

We have not attempted to state in detail the evidence in the case. Enough has been said to show that there is not only a strong conflict of evidence, but that the principal witnesses are almost wholly contradictory of each other. If Tyree's version of the occurrences which he narrrates is to be accepted, his conduct was beyond reproach, and furnished no cause for any complaint whatever. If, on the other hand, Dr. Harrison's version be true, he would naturally have been justly irritated, and it might be said that the occasion would have excused him.

It is for the jury to pass upon the credibility of witnesses, and upon the weight of evidence. When their verdict is rendered, courts have, it is true, a restricted power to review their findings as to the preponderance of the testimony; but the credibility of witnesses is exclusively for the jury.

In this case, as we have seen, the jury rendered a verdict with which the judge of the trial court was not satisfied, and it was set aside. Such a case does not stand upon a demurrer to evidence. As was said by this court in *Chapman* v. *Real Estate Inv. Co.*, 96 Va. 177: "If the trial judge is dissatisfied with the verdict, and grants a new trial, some latitude must be allowed to his discretion," but in such a case the verdict of the jury "is entitled to great respect, and should not be disturbed even by the trial court, unless plainly against the evidence"—*Marshall* v. *Valley R. R. Co.*, 99 Va. 804—and in that case, there being a strong conflict in the testimony, the judgment of the trial court setting aside the verdict was reversed.

It is true that in *Strode* v. *Clement, supra*, the court reversed the judgment which awarded damages, because it was held that the communication complained of was privileged, and that the presumption that the defendant acted in good faith and without malice was not rebutted by the evidence, although the jury had found a verdict for the plaintiff; but that case is to be distin-

guished from the one under consideration in this decisive particular:   In it only one witness was examined, and from his evidence the facts of the case appeared, "thus affording the appellate court the same opportunity to draw their conclusion as the trial court, and the jury possessed;" while here, the evidence is conflicting, the witnesses are contradictory of each other in every important particular, and just such a case is presented as is peculiarly within the province of a jury.

We are of opinion that the judgment of the Circuit Court should be reversed, and judgment rendered for plaintiff in error upon the verdict of the jury.

*Reversed.*