## HOWARD v. LYONS ET AL.

No. 57.  Argued December 8–9, 1958.—Restored to the calendar
for reargument December 15, 1958.—Reargued April
20–21, 1959.—Decided June 29, 1959.

Paul A. Sweeney argued the cause and Daniel M. Fried-
man reargued the cause for petitioner.  On the brief were
Solicitor General Rankin, Assistant Attorney General
Doub, Morton Hollander and Bernard Cedarbaum.

Claude L. Dawson argued and reargued the cause, and
filed a brief, for respondents.

· MR. JUSTICE HARLAN delivered the opinion of the Court.

This is a companion case to *Barr* v. *Matteo, ante,* p. 564, decided today. Petitioner Howard in 1955 was a Captain in the United States Navy and Commander of the Boston Naval Shipyard. Respondent Lyons was National Commander of the Federal Employees Veterans Association, Inc., and respondent McAteer a local officer of that Association. Both respondents were at all material times civilian employees at the Boston Naval Shipyard, and for several years before September 8, 1955, the Association was recognized by the shipyard as an employees' representative group. On that date petitioner withdrew official recognition of the Association—an action which is not here challenged.

Respondents brought suit in the Massachusetts District Court, invoking diversity jurisdiction, and making the following allegations: that on September 8, 1955, petitioner circulated a statement defaming them; that the statement purported to be an official memorandum to the Chief of the Bureau of Ships and the Chief of Navy Industrial Relations, but was released by petitioner "outside of his official duties" to various newspapers and wire services and to the members of the Massachusetts delegation in the Congress of the United States; that in circulating the statement petitioner acted "maliciously, wilfully, wickedly, recklessly and falsely and with malice aforesight [*sic*]"; and that the statement was intended to and did injure the reputation of respondents.

A copy of the statement complained of was filed with the complaint. It is in the form of an official report directed to the Chief of the Bureau of Ships and the Chief of Industrial Relations of the Department of the Navy, reciting petitioner's dissatisfaction with the activities

of the Federal Employees Veterans Association at the shipyard and announcing his intention to withdraw the recognition previously accorded it.[1]

Petitioner answered, stating that the statement complained of was in fact an official communication, and that in sending copies of it to the Massachusetts congressional delegation he was acting within the scope of his duties and pursuant to Department of the Navy policy; and denying that outside of his official duties he had released copies of the communication to the newspapers. He thereupon moved for summary judgment, attaching to the motion his own affidavit essentially repeating the statements from his answer above summarized, and an affidavit from the Commandant of the First Naval District. That affidavit stated that the Commandant was petitioner's commanding officer; that the making of reports to the Bureau of Ships relative to any significant personnel action at the shipyard was one of petitioner's official duties; that also among those duties was the furnishing of copies of such

---

[1] No purpose would be served by setting out the entire, lengthy report. It is adequately summarized in the Court of Appeals' opinion as follows:

"This letter alleged that plaintiff Lyons by name, and the other plaintiff by description, 'exercise a predominant influence' in the organizational activities; that the organization has been giving wide distribution to a newsletter or bulletin; that this bulletin has become more and more unfairly critical of the shipyard administration, for the purpose of not only thwarting the aims of the shipyard administration in the accomplishment of its mission, but also to further personal aims and self-interests of the individuals in control of the labor organization; that these 'editorial expletives' have adversely affected the general morale of employees of the shipyard, who are entitled to be protected against such 'overt subversion' by any labor group 'whose methods and whose motives are unethical, uninhibited, and lack the integrity of purpose that could reasonably be expected.' " 250 F. 2d 912, 913.

reports to the Massachusetts congressional delegation; and that the dissemination of the report of September 8, 1955, to the newspapers had been made through official channels and approved by the acting Commandant of the First Naval District.

The District Court granted summary judgment for petitioner, holding that the uncontradicted affidavits conclusively showed that the statement complained of was published by petitioner "in the discharge of his official duties and in relation to matters committed to him for determination," and that it was therefore absolutely privileged. On respondents' appeal, the Court of Appeals held that the sending of the official report to petitioner's superior officers was protected by an absolute privilege, and noted that reliance on the dissemination to the newspapers had been abandoned by respondents on appeal in the face of petitioner's sworn statement that he had not been responsible for that publication. As to the publication to the Massachusetts congressional delegation, however, the court, one judge dissenting, refused to allow more than a qualified privilege, although recognizing that "it is true that these members of Congress did have an official interest in being kept advised of important developments in labor relations at the Boston Naval Shipyard," and that "the Commander of the Boston Naval Shipyard might have conceived it to be a proper exercise of his official functions to see to it that the members of Congress should receive copies of such official report . . . ." Accordingly, it reversed the judgment of the District Court and remanded the case for trial. 250 F. 2d 912.

We granted certiorari to consider petitioner's contention that the Court of Appeals had erred in failing to recognize his plea of absolute privilege in respect of the publication to members of Congress. 357 U. S. 903. Respondents did not cross-petition for certiorari.

At the outset, we take note of a question which the Court of Appeals, on its view of the case, did not find it necessary to resolve—whether the extent of the privilege in respect of civil liability for statements allegedly defamatory under state law which may be claimed by officers of the Federal Government, acting in the course of their duties, is a question as to which the federal courts are bound to follow state law. We think that the very statement of the question dictates a negative answer. The authority of a federal officer to act derives from federal sources, and the rule which recognizes a privilege under appropriate circumstances as to statements made in the course of duty is one designed to promote the effective functioning of the Federal Government. No subject could be one of more peculiarly federal concern, and it would deny the very considerations which give the rule of privilege its being to leave determination of its extent to the vagaries of the laws of the several States. Cf. *Clearfield Trust Co.* v. *United States,* 318 U. S. 363. We hold that the validity of petitioner's claim of absolute privilege must be judged by federal standards, to be formulated by the courts in the absence of legislative action by Congress.

Our decision in *Barr* v. *Matteo, ante,* p. 564, governs this case. As has been observed, petitioner and his commanding officer both stated in uncontradicted affidavits that the sending of copies of the report here at issue to members of the Massachusetts congressional delegation was part of petitioner's official duties. Although of course such an averment by the defendant cannot foreclose the courts from examination of the question, we think that the affidavit of petitioner's commanding officer, and a Memorandum of Instructions issued by the Secretary of the Navy which petitioner has with our leave filed in this Court,[2]

_____

[2] SECNAV Instruction 5730.5, issued February 3, 1955, paragraph 12: "*Congressional Notification of Actions of Interest.* Members of

plainly show that the District Court was correct in find-
ing that the circulation of the report to the Massachu-
setts congressional delegation was "in the discharge of
[petitioner's] . . . official duties and in relation to
matters committed to him for determination."

*Reversed.*

MR. JUSTICE BLACK concurs for the reasons stated in
his concurring opinion in *Barr* v. *Matteo, ante,* p. 576.

[For dissenting opinion of MR. JUSTICE BRENNAN, see
*ante,* p. 586.]

MR. CHIEF JUSTICE WARREN with whom MR. JUSTICE
DOUGLAS joins, dissenting.

I cannot agree that Captain Howard's action in sending
a copy of his report to the Massachusetts Congressional
Delegation was absolutely privileged.[1] In its argument
in this case, the Government consistently distinguished
this case from *Barr* v. *Matteo, ante,* p. 564, decided today,
by characterizing Captain Howard as a man who was
acting under strict orders and who had no discretion.

Until reargument in this Court, the only indications
that it was mandatory for Captain Howard to report
matters of this sort to Congress were the bald assertions
to that effect in Captain Howard's affidavit and in the
affidavit of his superior, Admiral Schnackenberg, in the
District Court. No naval regulation was cited and no

---

Congress are very anxious to keep in touch with what is going on in
their respective states and districts. Navy agencies shall keep them
advised, if possible in advance, of any new actions or curtailment
of actions which may affect them."

[1] I agree with the Court in its determination that federal law
controls this matter.

other authority was offered. It is significant that, in the same affidavit, when Captain Howard was explaining why he had transmitted copies of the report to a superior, he was able to cite chapter and verse of the U. S. Navy Public Information Manual as authority for that action.

For the first time on reargument in this Court, the Government produced the letter from the Secretary of the Navy referred to in the Court's opinion. The paragraph relied on is nothing more than a general policy statement applicable only to "Navy agencies." [2] The letter was in no way directed toward labor problems—and the quoted portion is but a few lines in a five-page letter sent to a general distribution list and apparently never inserted in the Federal Register or any Navy Manual. Obviously, this letter was not cited by Captain Howard because he was unaware of its existence—or its applicability.

The short explanation is that the Captain thought that since the plaintiffs had attacked the administration of the shipyard by sending copies of their newsletters and charges to Congress, he should send Congress his side of the story. This he had a right to do but in doing so he should have no greater privilege than his critic. The plaintiffs in this case at most received qualified privilege for their complaints to Congress,[3] yet the Captain's answer is given absolute privilege.

---

[2] "Navy agencies" is defined in paragraph 2b of the same letter as follows:

"This term includes the Civilian Executive Assistants to the Secretary, the Naval Professional Assistants to the Secretary and the Heads of Offices and Boards of the Navy Department."
Surely it was never intended that every naval officer who thought that he knew something in which Congress might be interested, was required to contact Congress directly.

[3] See, e. g., Sweeney v. Higgins, 117 Me. 415, 104 A. 791; Tyree v. Harrison, 100 Va. 540, 42 S. E. 295; Hancock v. Mitchell, 83 W. Va. 156, 98 S. E. 65.

600

As my dissent in *Barr* v. *Matteo* indicates, the burden of proof is on the defendant to sustain his claim of privilege, *ante,* p. 579. I do not read this record as placing a mandatory duty on Captain Howard to make the report in question to Congress.[4]

I would affirm.

---

[4] On this record, I cannot believe that Captain Howard would have been derelict in his duty if he had not sent the report to Congress—and it has never been suggested that such action would have warranted disciplinary measures.