**Jacob M. POSS, Plaintiff,**

v.

**Jerome LIEBERMAN, Defendant.**

**Civ. No. 60-C-539.**

United States District Court
E. D. New York.

Sept. 20, 1960.

Jacob M. Poss, New York City, for plaintiff.

Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., for defendant, by Myron Beldock, Asst. U. S. Atty., Brooklyn, N. Y.

ZAVATT, District Judge.

Before the court are two motions: the plaintiff's motion to remand the cause to the New York Supreme Court, Kings County, from whence it was removed here; and the defendant's motion for summary judgment. For the reasons that follow the plaintiff's motion must be denied and the defendant's motion must be granted.

The action is for libel. The facts are these: The defendant was a claims representative for the Social Security Administration. In December of 1957 he was engaged in processing a claim for old-age benefits filed by Mrs. Mae Poss, the plaintiff's wife. Her claim was based on employment by two family-held corporations of which the plaintiff was an officer and stockholder. At issue in her claim was whether her purported salary represented work actually done or whether it was deliberately padded for the purpose of increasing potential social security benefits.[1]

The plaintiff is a lawyer and served as his wife's representative in the proceedings before the agency. In reference to his wife's claim he spoke to the defendant at various times. One such conversation concerned the books and records, particularly the minutes, of the two corporations that employed the claimant, which the defendant wanted produced. The plaintiff refused on legal grounds. On the same day the defendant prepared a "report of contact" wherein he wrote the defamatory statement that the plaintiff had been disbarred. That statement is false. The plaintiff is a member in good standing of the Bar of the State of New York. The report bearing the libel in the regular course of events became part of Mrs. Poss' file.

For all that appears from the papers in this case, the report remained unread and unpublished until sometime in April, 1959. At that time Mrs. Poss' claim was noticed for hearing before the referee following the disallowance of her claim by the Bureau of Old-Age and Survivors Insurance. In preparing for the hearing, Mr. Poss inspected that part of the claimant's file that was open to him. He found the report of contact; read it; and ordered it photo-copied along with several other file papers. In all this Mr. Poss was acting as the agent of his wife, the claimant.

Suit was begun in Supreme Court, Kings County, on April 6, 1960 when a summons without complaint attached was personally served on the defendant. On April 23, 1960, the defendant made demand for a copy of the complaint which was served upon him on May 17, 1960. Thereafter, on June 3, 1960, the action was removed to this court.

We come now to the plaintiff's motion to remand. The action was removed pursuant to 28 U.S.C. § 1442(a) which provides:

"A civil action * * * commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:"

"(1) Any officer of the United States * * * or person acting under him, for any act under color of such office * * *."

The plaintiff's main contention is that, in determining the validity of a removal, only the complaint may be looked to; that if the complaint does not allege, as this one does not, that the action is brought against a federal officer for acts committed under color of his office, the removal is improper and the action must be remanded. But the plaintiff has confused the rule under the general removal statute, 28 U.S.C. § 1441 (removal in cases involving a federal question) with the rule for removal in cases involving

1. These introductory facts are taken from the opinion of Judge Abruzzo in the unreported case of Poss v. Flemming, D.C. E.D.N.Y., 187 F.Supp. 824. Judge Abruzzo upheld the determination of the referee that fixed the claimant's salary adverse to her contentions. Notice of appeal in that case has been filed.

federal officers. To remove under § 1441 the federal question must appear in the complaint, and only in the complaint. To remove under § 1442 the removal petition may provide the jurisdictional facts if the complaint does not. Compare People's United States Bank v. Goodwin, C.C. E.D.Mo.1908, 160 F. 727, with People's United States Bank v. Goodwin, C.C.E.D. Mo.1908, 162 F. 937, and Gay v. Ruff, 1934, 292 U.S. 25, 54 S.Ct. 608, 78 L.Ed. 1099. See generally, Hart & Wechsler, The Federal Courts and The Federal System, 763 & n. 1 (1953). The removal petition here, supported by the affidavit of the defendant, supplies the facts necessary to support the removal.

We thus come to the defendant's motion for summary judgment and the merits of the controversy. The defendant relies on two independent legal theories: first, that the libel was never published, or alternatively, that the plaintiff published it himself; and second, that the statement is absolutely privileged. Whether the libel was published presents some nice factual issues that are inappropriate on a motion for summary judgment. For although Mr. Poss' conclusion that the libel was published to his wife when he saw it is clearly wrong, it seems probable that the libel was published at some earlier time although, as I have said, neither the complaint nor the affidavits so state. I think the fact of earlier publication can, if not must, be inferred from the undisputed fact that the Bureau had made a determination of Mrs. Poss' claim prior to Mr. Poss' inspection of the files because it is probable that the file was read by the official responsible for the determination preparatory to making that determination.

The issue of privilege, however, can be resolved without reference to contradicted or ambiguous facts, so that if the matter is absolutely privileged—if malice does not defeat the privilege—the defendant's motion must be granted. Two cases decided by the United States Supreme Court in 1959, Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434, and Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454, suggest the answer.

Barr involved a libel contained in a news release prepared by the Director of the Office of Rent Stabilization, a federal agency, and distributed by him to the press. Howard involved a libel contained in an official report by the defendant, a captain in the navy and Commander of the Boston shipyard, to his superior, the Chief of the Bureau of Ships. The defendant also sent a copy of the report to the Massachusetts congressional delegation.

Procedurally, Barr came to the Court after a jury verdict for the plaintiff that was upheld in the Circuit Court against the defense of absolute privilege. The first time around the Court sent it back to the Circuit Court for a determination on the issue of qualified privilege and that court then remanded the case for retrial. This remand was appealed from, and thus the issue before the Court was whether absolute privilege attached rendering allegations of malice in the complaint immaterial, and requiring judgment for the defendant as a matter of law. Howard came to the Court on appeals from the District Court's grant of summary judgment to the defendant upon the theory of absolute privilege. The Circuit Court reversed, finding that as to the publication to the congressional delegation there was only qualified privilege, and that this aspect required a trial. Certiorari was granted to determine only the issue of whether absolute privilege attached to this publication also. In both cases the Court found that absolute privilege attached. The opinion in Barr was 5 to 4. The opinion in Howard was 6 to 3.

Comparing the two cases and the positions of the majority and the dissent in each case, it is obvious that Barr is a "press release" case, and that Howard is also; that the Court was disturbed because the libels in both cases had wide publication and that this fact tended to make the weighing of conflicting social interests more difficult. There was, of course, some disagreement between the

Justices as to what is to be weighed. The majority in *Barr* began:

"We are called upon in this case to weigh in a particular context two considerations of high importance which now and again come into sharp conflict—on the one hand, the protection of the individual citizen against pecuniary damage caused by oppressive or malicious action on the part of officials of the Federal Government; and on the other, the protection of the public interest by shielding responsible governmental officers against the harassment and inevitable hazards of vindictive or ill-founded damage suits brought on account of action taken in the exercise of their official responsibilities."

360 U.S. at pages 564–565, 79 S.Ct. at page 1336. Justice Brennan in his dissent which covered both cases said of this quotation:

"This, I fear is a gossamer web self-spun without a scintilla of support to which one can point. To come to this conclusion, and to shift the line from the already extensive protection given the public officer by the qualified privilege doctrine, demands the resolution of large imponderables which one might have thought would be better the business of the Legislative Branch."

360 U.S. at page 590, 79 S.Ct. at page 1349.

 Nevertheless, if *Barr* and *Howard* are wide publication cases, *a fortiori* there is absolute immunity for official statements made for limited publication.[2]

The dissent by Justices Warren and Douglas assumed as much:

"It may be assumed, *arguendo*, that a government employee should have absolute immunity when according to his duty he makes internal reports to his superior or to another upon his superior's order. [Citing 3 lower court cases.] This might be a practical necessity of government that would find its justification in the need for a free flow of information within every executive department. It may not be unreasonable to assume that if a maliciously false libel is uttered in an internal report, it will be recognized as such and discredited without further dissemination."

360 U.S. at page 582, 79 S.Ct. at page 1345. The aspect of the *Howard* case that involved such an intra-department report did not reach the Court because certiorari was not sought on this issue. Thus the Circuit Court's holding is itself precedent for the proposition that there is absolute privilege for intra-department reports. Lyons v. Howard, 1 Cir., 1958, 250 F.2d 912.[3]

The only legal issue remaining is whether the rule of absolute privilege for intra-office reports applies to the lower echelons of the bureaucratic hierarchy. Justice Brennan in his dissent construed the decisions of the Court as applying across the board: "Today's sweeping solution insures that government officials of high and low rank will not be involved in litigation over their allegedly defamatory statements." 360 U.S. at page 589, 79 S.Ct. at page 1349.

2. That the report in the instant case has only limited circulation cannot be doubted. The files of which the report is a part is not open to public scrutiny and it is a misdemeanor to divulge its contents. See 42 U.S.C.A. § 1306(a).

3. Compare with the statement of policy in the dissent in *Barr*, quoted supra, this statement from the Circuit Court's opinion in *Howard*:

"Of course the policy behind the granting of such absolute immunity is not to protect wicked defendants from the normal civil liabilities * * *. Rather, the policy is to further what is deemed to be the greater public interest of assuring to conscientious public officials complete freedom in the exercise of their duties, without the inhibiting fear of possible lawsuits in which they would have to satisfy a jury of their own good faith." 250 F.2d at page 914.

I think that Justice Brennan reads the Court's opinion correctly; that absolute privilege does attach to utterances of underlings. The Court's reasoning behind this result follows:

"We do not think that the principle announced in Vilas can properly be restricted to executive officers of cabinet rank, and in fact it never has been so restricted by the lower federal courts. [Citing cases in the footnote.] The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government. * * *

" * * * It is not the title of his office but the duties with which the particular officer sought to be made to respond in damages is entrusted —the relation of the act complained of to 'matters committed by law to his control or supervision' [citing Vilas]—which must provide the guide in delineating the scope of the rule which clothes the official acts of the executive officer with immunity from civil defamation suits."

360 U.S. at pages 572–574, 79 S.Ct. at pages 1340–1341.

■ The next inquiry is, of course, whether there is the necessary "relation of the act complained of to matters committed by law to [the defendant's] control or supervision." The affidavit of the defendant covers this point nicely: [4]

"It was my duty as Claims Representative to make a written report of all interviews, including the one with Mr. Poss in December of 1957. It was also my duty to include in a claimant's file information which might bear on the bona fides of a claim and the credibility of both the persons interviewed and the material submitted in support of a claim."

The affidavit of the defendant's supervisor, the manager of the District Office, is further support: [5]

"One of [the defendant's] major duties as a Claims Representative for Social Security was the evaluation of the credibility of the person whom he was interviewing and of the material which was submitted to him for consideration. He would have been derelict in his responsibility if he had failed to include in the official report of the interview with Mr. Poss the statement complained of in this action * * *."

The plaintiff has two objections on the issue of whether the report was within the scope of the defendant's powers. The first can be phrased in the language used by Judge Learned Hand in the case of Gregoire v. Biddle, 2 Cir., 1949, 177 F. 2d 579, 581: "[O]fficial powers, since they exist for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds." But the refutation follows directly:

"What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him."

Ibid. The plaintiff's second objection, although probably subsumed under the first, is this: The character of the claimant's legal representative can never have any relevance to the bona fides of the claim, so that mention of it was necessarily outside the defendant's powers. The quick answer is that the plaintiff was more than the legal representative, and more than the husband, of the claimant He was also a principal stockholder and officer of a corporation that employed the claimant, and the nature of the employment relationship was directly in issue before the agency.

■ The plaintiff has one arrow left If he cannot recover in libel he contends

---

4. Affidavit of Jerome Lieberman, dated June 8, 1960.

5. Affidavit of Louis J. Ritter, dated June 8, 1960.

that the complaint makes out a "prima facie tort" and that he is entitled to a trial on this theory. Although the doctrine is recognized in a number of jurisdictions it is not clear that it has been embodied in the general federal common law that governs actions in this area. See Howard v. Lyons, 1959, 360 U.S. 593, 597, 79 S.Ct. 1331, 1333, 3 L.Ed.2d 1454. Of the doctrine itself a noted authority in the field has this to say:

> "[T]he classic statement of [the doctrine] is that 'intentionally to do that which is calculated in the ordinary course of events to damage, and which does, in fact, damage another in that person's property or trade, is actionable if done without just cause or excuse.' This, of course, is no more than a form of words emphasizing the importance of motive; and the real problem underlying the question of motive remains the same one of balancing the conflicting interests of the parties, and determining whether the defendant's objective should prevail at the expense of the damage to the plaintiff. Whether the social value of that objective is sufficient to outweigh the gravity of the interference often becomes the question of deciding significance."

Prosser, Torts 23 (2d ed. 1955). Put in those terms it is obvious that the plaintiff has added nothing to his case because the same interests that conflict with and defeat his right to recovery in libel are called into play here. Looked at slightly differently, it appears that in this context the prima facie tort doctrine is not much more than a tag line either for the proposition that malicious conduct is *ipso facto* outside the scope of an official's powers, or for the proposition that allegations of malice defeat an absolute privilege. These propositions have already been dealt with.

The plaintiff's motion to remand is denied. The defendant's motion for summary judgment is granted. Settle an order, consistent with this opinion, on or before September 30, 1960.