**B. C. MORTON INTERNATIONAL COR-PORATION, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE COR-PORATION, Defendant.**

Civ. A. No. 61–543–W.

United States District Court
D. Massachusetts.

Nov. 29, 1961.

David Burstein, Hale & Dorr, Boston, Mass., for plaintiff.

Robert Proctor, Charles F. Choate, Choate, Hall & Stewart, Boston, Mass., for defendant.

WYZANSKI, District Judge.

This case is before the Court on defendant's motion to dismiss, addressed initially to the original complaint, but, by agreement of the parties, extended to the amended complaint filed pursuant to the motion of November 20, 1961. The question is whether the case is one appropriate for a declaratory judgment and injunction, or, whether, as the motion asserts, the amended complaint "fails to show the existence of an actual controversy between the parties of the nature required by Article III of the United States Constitution and Section 2201 of the Judicial Code, Title 28" * * * and "fails to state a claim against the defendant upon which relief can be granted."

The following are the essential allegations of the amended complaint.

Plaintiff is a Massachusetts corporation; defendant, as its name indicates, is a corporation organized under the Federal Deposit Insurance Act, a federal law, 12 U.S.C.A. § 1811.

Jurisdiction rests on the combined effect of provisions in (1) 12 U.S.C.A. § 1819 that "all suits of a civil nature at common law or in equity to which the [defendant] corporation shall be a party shall be deemed to arise under the laws of the United States", and (2) 28 U.S.C. § 1331 that "The district courts shall have original jurisdiction of all civil [cases] wherein the matter in controversy exceeds the sum or value of $10,-000, exclusive of interest and costs, and arises under the * * * laws * * * of the United States."

Plaintiff seeks a declaratory judgment upon the interpretation of 12 U.S.C.A. § 1813, subsections (*l*) and (m), which define at length the meaning of the terms "deposit" and "insured deposit", as used in the statute creating defendant.

Plaintiff is in the business of purchasing and selling certificates of deposit issued by "insured banks", as defined in 12 U.S.C.A. § 1813(h). In particular it trades in certificates of deposit issued by banks in return for so-called "compensating balances" exacted by those banks when making loans. "For a number of years the plaintiff has engaged in transactions, such as those described above, involving millions of dollars annually."

"On or about November 1960 the defendant issued a public release to the effect that certificates of deposit issued in the manner described above would not be regarded as qualifying for insurance under the Act * * * Such action by the defendant was for the specific purpose of interfering with and destroying the business of the plaintiff." By this action plaintiff's business was impaired. Plaintiff has been "threatened [by whom we are not told] with injunction and other proceedings under the Securities Act of 1933 [15 U.S.C.A. § 77a et seq.] if it should sell or offer to sell any certificate of deposit without representing

that said certificates of deposit are not insured."

Plaintiff prays for a declaration that such certificates of deposit for compensatory balances are insured deposits within the meaning of the Federal Deposit Insurance Act, and for an injunction restraining defendant from representing otherwise. No injunction is specifically asked against proceedings by the S.E.C., (which, in any event, is not a party).

For purposes of 28 U.S.C. § 1331, we may assume that this case does arise under a law of the United States and in that sense is within federal jurisdiction. But the critical questions are whether plaintiff has stated a cause of action and whether there is any "case or controversy" in the sense of the Constitution or the Declaratory Judgments statute.

With artfulness plaintiff has not set forth in the pleading the text of defendant's alleged statement. But from the colloquy at the bar, it appeared that defendant did not address any statement to plaintiff, or to a particular prospective customer of plaintiff, or with express reference to plaintiff as distinguished from innumerable others in like lines of activity. And, despite the allegation in paragraph 9 of the amended complaint referring to defendant's "specific purpose of interfering with and destroying the business of the plaintiff", it was virtually conceded that if defendant sought any destruction whatsoever, the object sought was to eliminate a common kind of dealing by many persons, and not to single out the plaintiff as a special target.

In looking at the amended complaint, as it was orally construed at our bar by its draftsman, we are asked to hold that defendant's action falls "within the general principles applying to disparagement included within the general term of public libel." See A.L.I. Restatement, Torts, Vol. 3, Ch. 28. (The foregoing quotation and the citation, slightly corrected, are to be found on page 4 of plaintiff's brief.)

■ The threshold question is in determining whether there was tortious conduct should reference be made to federal law, or to the law of the Commonwealth of Massachusetts wherein this Court sits, or to the law of the unknown state where the F.D.I.C. issued the press release, or to the law of the unknown places where plaintiff could have had advantageous contractual relations upon which defendant might have impinged. So far as appears there is no difference in the laws of any of these places. But if one is later discovered, it should be resolved by ruling that federal law applies. Admittedly here defendant in issuing its press release was acting within the scope of its authority. Indeed only on that premise would plaintiff be here seeking relief. And it is now authoritatively settled that where a federal agency, acting within the scope of its authority, makes a statement construing a federal statute, then it is federal, not state, law which determines whether the statement is privileged, and whether the statement invades a claimant's asserted right to carry on advantageous business relations. Howard v. Lyons, 360 U.S. 593, 597, 79 S.Ct. 1331, 3 L.Ed.2d 1454; Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed. 2d 1434; Greenberg v. Panama Transport Co., D.Mass., 185 F.Supp. 320.

■■ Under federal law a press release, addressed to the world at large by a federal governmental agency, in the exercise of its official functions about a generalized type of activity gives as against the addresser no cause of action to any individual in that type of activity who claims that his own business was adversely affected. The reason is that, as a federal agency, defendant has an absolute privilege under the federal law of torts to make a statement within the scope of its official functions even if it damages, or disparages, or interferes with advantageous business relations of, another. Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454; Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434. Cf. Restatement, Torts, § 641. And, being privileged, the statement cannot give rise to a cause of action for "disparagement of property." The very

part of the Restatement, Torts, cited by plaintiff, chapter 28, makes it clear in § 624 that the action is available only against "one who, *without a privilege to do so,* publishes matter which is untrue and disparaging."

Since no tort is alleged against defendant, it is entitled to have the amended complaint dismissed for plaintiff's failure "to state a claim against the defendant upon which relief can be granted."

If an appellate court, acting as in Keene Lumber Co. v. Leventhal, 1st Cir., 165 F.2d 815, should give a reading of the amended complaint more generous than this Court has given, and should find that there is to be squeezed out of plaintiff's pleading the allegation of a recognizable tort, and if it be indulgently assumed that, for purposes of the present motion, plaintiff has effectively alleged that more than $10,000 is involved (Cf. Food Fair Stores v. Food Fair, 1 Cir., 177 F.2d 177, 182,) nonetheless, the case is not appropriate for either a declaratory judgment or injunctive relief.

Article III of the Constitution inhibits a court from adjudicating anything that is not an actual "case or controversy." Sometimes it is true that the courts have rendered opinions upon the validity of an administrative agency's regulation which impaired a claimant's capacity to do business. Cf. Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563. But to render judicial opinions on press releases would be an intolerably burdensome and generally futile exercise of an advisory opinion jurisdiction. Where it is not alleged either that the statement has plaintiff as its particular, specialized target, or that the author of the press release plans action against plaintiff, the matter is certainly not ripe for consideration as a "case or controversy" in the Constitutional and statutory sense. Cf. Poe v. Ullman, 367 U.S. 497, 501, 81 S.Ct. 1752, 6 L.Ed.2d 989; United Public Workers of America (CIO) v. Mitchell, 330 U.S. 75, 88, 67 S.Ct. 556, 91 L.Ed.

754. See Alexander M. Bickel, The Supreme Court, 1960 Term, Foreword, The Passive Virtues (1961), 75 Harv.L.Rev. 40, 58–64.

Furthermore, the federal courts, on grounds of the limits of federal *equity* jurisprudence and with due deference to the policy considerations always present where freedom of speech is directly or indirectly involved, might decline to enjoin a defendant from issuing press releases and might decline to declare against a defendant on account of a press release in advance of an action for damages. To act now would foreclose what might otherwise be adjudicated more properly by a jury trial at common law. See dissenting opinions of Justices Douglas and Brennan in Kingsley Books, Inc. v. Brown, 354 U.S. 436, 446–448, 77 S.Ct. 1325, 1 L.Ed.2d 1469.

Motion granted. Amended complaint dismissed with costs.