**Benjamin STEINBERG, Plaintiff,**

**v.**

**Roderic L. O'CONNOR, Defendant.**

**Civ. No. 7831.**

United States District Court
D. Connecticut.

Dec. 21, 1961.

---

Catherine Roraback, New Haven, Conn., for plaintiff.

Robert C. Zampano, U. S. Atty., Dist. of Conn., New Haven, Conn., Andrew P. Vance, Atty., Dept. of Justice, Washington, D. C., for defendant.

ANDERSON, Chief Judge.

For a period of time, including November and December of 1958, the defendant was the Administrator, Bureau of Security and Consular Affairs, Department of State, in the United States Government. Included within the Bureau was the Passport Office which administers laws and develops regulations and policy relating to nationality and to protection, documentation, and control of travel abroad of United States citizens and nationals. The Bureau, also, directs and coordinates the work of the Foreign Service in these fields. Among the duties of the Administrator, who held a rank equal to that of an Assistant Secretary of State, was the maintenance of close liaison with the appropriate committees of Congress.

On November 8th, 1958 the defendant, as Administrator, appeared before representatives of the Veterans of Foreign Wars and addressed them on the general subject of the issuance of passports to persons who had a record of activity in support of the international communist movement. Among other things, he said:

"* * * Your government is today powerless to deny passports to known Communists who are going abroad for the purpose of assisting and supporting the international Communist conspiracy * *

"* * * the State Department has received as of early this week 596 applications for passports from persons who have records of activity in support of the international Communist movement * * *

"In our view, the unrestricted travel of these 596 persons abroad represents a real danger to the security of the United States * *

"They are soldiers in the Cold War—but they are soldiers of the enemy. They are just as clearly the enemy as were the troops abroad that shot at you and me in World War II. They are going abroad

under instructions to render service to the Communist conspiracy."

Although no specific mention was made of the plaintiff in this address, the plaintiff claims that the statements were intended to concern the plaintiff and were understood by the general public to concern the plaintiff; and on December 15, 1958, the defendant, at the request of Senator James O. Eastland, Chairman, appeared before a Sub-Committee of the Senate Committee on Judiciary to testify concerning critical passport problems. In the course of his testimony before that Sub-Committee the defendant said, in part:

"BENJAMIN STEINBERG

"The information of record reflects subject's membership and activity in the Communist Party over an extended period of time dating back to 1950.

"He is the holder of a passport issued in September 1958.

"I have with me here summaries of about 30 such cases, which we have picked out as being perhaps the most interesting \* \* \* Case No. \* \* \* 23, Benjamin Steinberg.

"In 1955, at the conclusion of a Far East tour by the Symphony of the Air, subject was described as a 'violent Communist' who spread 'Red propaganda' during the tour."

The two counts of the complaint are based upon the above quoted portions of the address before the V.F.W. and of the testimony before the Judiciary Sub-Committee. The plaintiff claims that the statements made by the defendant were defamatory and were uttered maliciously. He also asserts that the defendant made them contrary to a regulation of the State Department and without authority; and that they were, therefore, outside the perimeter of his line of duty. The defendant has pleaded absolute privilege.

■ The controlling authorities applicable to the issues of this case are Barr v. Matteo, 360 U.S. 564, 79 S.Ct.

1335, 3 L.Ed.2d 1434 (1959); and Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959). It is perfectly clear that the subject matter of the statements made by the defendant was within the "discharge of the defendant's official duties and in relation to matter committed to him for determination". His public statement in the address before the V.F.W. concerned the business of his office and dealt with a matter of almost universal public interest. In the Barr case the Court said:

"It would be an unduly restrictive view of the scope of the duties of a policy-making executive official to hold that a public statement of agency policy in respect to matters of wide public interest and concern is not action in the line of duty." 360 U.S., p. 575, 79 S.Ct., p. 1341.

Moreover, the defendant was bound by the expressly delineated duties of his office to appear and testify concerning the passport problem then under consideration by the Judiciary Sub-Committee.

The plaintiff argues, however, that the defendant's statements went beyond the scope and range of his duties because he may have, in the course of making them, disclosed certain material classified by a department of the Government, other than the Department of State, without showing beyond dispute, that he had secured the necessary clearance for the use of the classified material from the department which had classified it.

■ The gist of the defendant's deposition testimony on this particular point was that, when material classified by another department was sought to be used by him, the customary practice of his office was to contact the classifying agency and have the material declassified. The defendant testified that while he had no personal knowledge of when, where and how a release of such material relating to Steinberg had been procured, in the sense that he personally went to the other agency or department, nevertheless, he had conferred with his

own staff about it and had been assured by his subordinates that the customary procedure had been followed. The plaintiff claims that this is not enough and that the defendant must produce clear and convincing evidence that the release was, in fact, obtained from the other agency or department. The court is satisfied, however, that the defendant had no duty to do more than he did. If every high official in the Government, of comparable rank, was required, before taking any action, personally to investigate and examine the precise steps taken by his subordinates in carrying out their delegated duties, the administration of the Government would shortly come to a standstill. Moreover, under the circumstances of this case the plaintiff has no standing to invoke an inadequate fulfillment or a breach of an internal regulation of the State Department by some subordinate in carrying out his function. The broad principles laid down in Barr v. Matteo, supra, and Howard v. Lyons, supra, should not be rendered completely ineffectual in the case of statements by an official of policy-making rank because somebody on his staff failed to comply with all of the technical niceties of the Department's internal regulations; and this is particularly so where there is no evidence of a lack of concurrence by the other agency or department which originally classified the material. Preble v. Johnson, 275 F.2d 275 (10th Cir. 1960); Gaines v. Wren, 185 F.Supp. 774 (N.D.Georgia 1960).

It is further uncontradicted that all of the acts of the defendant relating to this case were fully ratified and approved by the defendant's superiors in the Department of State.

It is concluded that there is no genuine issue as to any material fact and the evidential matter presented brings the statements of the defendant within the protective rule of Barr v. Matteo, supra.

Summary judgment, therefore, may enter in favor of the defendant.