Richard E. AMMONS et al., Plaintiffs,

v.

Victor J. BODISH, Defendant.

Civ. A. No. 68–140.

United States District Court,
S. D. Ohio, E. D.

Jan. 14, 1970.

**1150**

Robert M. Draper, U. S. Atty., and Alvin J. McKenna, Asst. U. S. Atty., for plaintiffs.

Jerry Weiner, Columbus, Ohio, for defendant.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter is before the Court on the motion of the defendant for summary judgment under the provisions of Rule 56 of the Federal Rules of Civil Procedure.

Rule 56(b) states, in part, that "a party against whom a claim * * * is asserted * * * may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof." Where the pleadings and affidavits on file show that there is no genuine issue as to any material fact relating to the issue presented by the motion, a summary judgment on the motion, if appropriate, may be rendered forthwith.

This is an action for libel and slander brought by the plaintiffs, employees of the United States Post Office Department at Columbus, Ohio, against the defendant Victor J. Bodish, Postmaster of the Columbus, Ohio Branch of the United States Post Office Department. The petition in paragraph III alleges that:

* * * on or about March 15, 1968, the defendant maliciously spoke to and,

in the presence and hearing of one Jay Gibian, an employee of The Columbus Dispatch or divers other persons, the following false defamatory words of and concerning plaintiffs, to wit: "* * * I am disturbed I am forced to reinstate the three men. I felt they are undesireable (sic) employes (sic) and their employment is just a waste of taxpayer's money."

The petition further alleges that said defamatory words were published in The Columbus Dispatch, a newspaper of general circulation in the Columbus, Ohio area, on or about March 15, 1968, and that said defamatory words, communicated to others, did cause great injury to the plaintiffs' reputations.

The defendant in his motion for summary judgment asserts the defense of privilege, stating that a federal official who makes public statements concerning federal employees on matters directly concerned with his work is protected from a libel or slander suit with respect to the contents thereof.

■ It is clear that the standards to be used in judging whether or not a federal officer is to have civil liability imposed upon him for acts allegedly done within the course of his official duties are federal, as opposed to state, standards.

The authority of a federal officer to act derives from federal sources, and the rule which recognizes a privilege [to alleged defamatory statements] under appropriate circumstances as to statements made in the course of duty is one designed to promote the effective functioning of the Federal Government. No subject could be one of more peculiarly federal concern, and it would deny the very considerations which give the rule of privilege its being to leave determination of its extent to the vagaries of the laws of the several States. Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959). [Brackets added.]

The *Howard* decision held that the validity of a claim of absolute privilege on

behalf of a federal officer must be judged by federal standards, to be formulated by the courts in the absence of an expression of legislative intent by Congress.

As stated in Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), the key determination to be made in the instant case is whether the actions of the federal official exceed "the outer perimeter of [his] line of duty." *Barr, supra,* 360 U.S. at 575, 79 S.Ct. at 1341. The memorandum in support of the defendant's motion cites numerous sections of the Postal Manual of the United States Post Office Department which set out various duties and responsibilities imposed upon the defendant as Postmaster of Columbus, Ohio.

Part 844.12

.121 A postmaster must * * * enforce departmental policies, programs, regulations, and procedures for management of his post office. The postmaster is the line operating head of his post office and gives direct supervision to personnel and postal functions in the main post office and its stations and branches. Within the scope of official delegations, policies, regulations, and procedures, the postmaster is responsible for taking final action on all matters affecting the operation of his post office.

.122 A postmaster is responsible for proper organization of his office, for proper conduct of the employees, and for courteous and efficient postal service to his patrons.

* * * * * *

.125 A postmaster shall be held personally responsible for unnecessary expenditures in the service, whether they be for excess regular employees, unnecessary overtime, excess auxiliary service, or extravagance in the use of supplies or equipment. In the very large offices where direct supervision cannot always be given by the postmaster, he shall be responsible for organizing his staff to assure efficient and economical operation.

* * * * * *

.127 A postmaster shall be responsible for having all departmental issuances currently and correctly maintained, for having these issuances made available to employees concerned, and for having employees comply with and abide by all applicable provisions.

* * * * * *

Part 844.13

.131 * * * It shall be the direct responsibility of the postmaster to:

* * * * * *

g. Conduct on his own initiative a positive patron relations program. He shall extend every reasonable assistance to the press and other public information media in gathering news about the Postal Service in his community.

* * * * * *

The rule in Barr, as applied to the admitted facts in the instant case, lead to the inescapable conclusion that the statements made by the defendant did not exceed the "outer perimeter of his line of duty." The Court is well aware of the competing interests involved in a determination of this sort: on the one hand, the protection of the citizenry from damage due to the defamatory statements, oppressively and maliciously made, uttered by officials of the Federal Government; and, on the other hand, the protection of the public's interest in an effective and efficient operation of the government by means of shielding competent and responsible public officials from vindictive damage suits brought on account of action taken in the exercise of their official responsibilities. See Camero v. Kostos, 253 F. Supp. 331 (D.C.N.J.1966) and Keiser v. Hartman, 339 F.2d 597 (3d Cir. 1964), cert. den. 381 U.S. 934, 85 S.Ct. 1764, 14 L.Ed.2d 699 (1965).

The Court determines that the statement alleged to have been made by the defendant did not exceed the "outer perimeter of [his] line of duty," thus making applicable the holding of Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3

L.Ed.2d 1434 (1959). Accordingly, the Court determines as a matter of law that the statement alleged to have been made by the defendant was absolutely privileged and a damage suit for defamation will not lie thereon.

Whereupon, the Court determines that the motion for summary judgment is meritorious, and therefore, it is granted. Summary Judgment is hereby granted in favor of the defendant.

This action is hereby dismissed.