**Ira GISSEN, Plaintiff,**

v.

**Arthur L. TACKMAN et al.,
Defendants.**

**Civ. A. No. 1843–73.**

United States District Court,
D. New Jersey.

Jan. 16, 1975.

Bernard A. Kuttner, Newark, N. J., for plaintiff.

Maryanne T. Desmond, Asst. U. S. Atty., Newark, N. J., for defendants.

## OPINION AND ORDER

WHIPPLE, Chief Judge.

This matter comes before the Court by way of defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Alternatively, defendants' move for an order pursuant to Fed.R. Civ.P. 56(b), for summary judgment on the ground that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law.

The plaintiff in this action seeks monetary damages of $225,000.00, plus punitive damages of $500,000.00 from each defendant, jointly and severally, for alleged discriminatory acts by defendants and deprivation of his constitutional rights. Jurisdiction is conferred on this Court under the fourteenth amendment of the constitution and 28 U.S.C. §§ 1331, 1332 and 1343.

Plaintiff alleges that the defendants, in their capacity as employees of HUD, attempted to, and in fact did, transfer the plaintiff from one regional office to another for discriminatory purposes based on his Jewish religion and caucasian race, rather than for reasons related to his employment qualifications.

Plaintiff further contends that as a result of such discrimination he was forced to accept employment at a lesser salary than he was entitled to and will continue to be harmed in the future.[1] Malicious motive and gross disregard of plaintiff's rights were also alleged.

The defendants in this motion assert their immunity from suit under the doctrine of official immunity and have submitted affadavits to support their claim that the defendants at all relevant times acted within the "outer perimeter" of their line of duty as government officials.

Should the Court find that defendants were in fact acting within the outer perimeter of their official duties, the major issue raised is whether the mere allegation of an improper motive of constitutional dimension will deny immunity to a government official acting within the scope of his authority and exercising a discretionary function.

The doctrine of official immunity provides that government officials enjoy an absolute privilege from civil liability should their questioned activity fall within the delegated scope of their authority and the action undertaken require the exercise of discretion. *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Howard v. Lyons,* 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959).

The doctrine was perhaps best explained in *Gregoire v. Biddle,* 177 F.2d 579 (2d Cir. 1949), in which Judge Learned Hand weighed the conflicting interests of a plaintiff wronged by the actions of a government official against the chilling effect that vexatious litigation would have upon a government official in performance of his duties. Noting that it was intolerable to allow wrongs committed by government officials to go unredressed, Judge Hand nevertheless found that the public interest in having government officials fearlessly perform their duties outweighed such potential danger. He reasoned:

> The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome,

---

1. Plaintiff left government employment voluntarily on October 13, 1972 and filed this action on December 26, 1973.

would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.

*Id.* at 581.

■ In *Barr v. Matteo, supra,* the Supreme Court adopted the reasoning of Judge Hand and held that the acting Director of the Office of Rent Stabilization was immune from liability for an allegedly libelous press release. In so holding, the Court set forth a dual test for determining whether a government official will be granted immunity. First, the official must be acting within the scope of his authority. Secondly, it must appear that the act was an appropriate exercise of that official's discretion. 360 U.S. at 575, 79 S.Ct. 1335.

Concerning the legal meaning of the "scope of authority" concept, the Court in *Barr v. Matteo* stated:

> What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him.
>
> . . .

360 U.S. at 572, 79 S.Ct. at 1340 (quoting from *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir. 1949)). Further, "[t]he fact that the action . . . taken was within the outer perimeter of petitioner's line of duty is enough to render the privilege applicable . . . ." 360 U.S. at 575, 79 S.Ct. at 1341.

The more difficult question is whether the actions challenged by the plaintiff required the exercise of discretion. *See Palmer v. Rogers,* 6 CCH Employment Practices Digest ¶ 8822, No. 1016–72 (D.D.C., September 7, 1973). The Second Circuit, in *Ove Gustausson Contracting Co. v. Floete,* 299 F.2d 655 (2d Cir. 1962), *cert. denied,* 374 U.S. 827, 83 S.Ct. 1862, 10 L.Ed.2d 1050 (1963), stated:

> There is no litmus paper test to distinguish acts of discretion, . . .

and to require a finding of "discretion" would merely postpone, for one step in the process of reasoning, the determination of the real question—is the act complained of the result of a judgment or decision which it is necessary that the Government official be free to make without fear or threat of vexatious or fictitious suits and alleged personal liability?

299 F.2d at 659. *See Bivens v. Six Unknown Named Agents,* 456 F.2d 1339, 1345–46 (2d Cir. 1972).

In *Carter v. Carlson,* 144 U.S.App.D. C. 388, 474 F.2d 358, 362 (1971), *rev'd on other grounds sub nom. District of Columbia v. Carter,* 409 U.S. 418, 93 S. Ct. 602, 34 L.Ed.2d 613 (1973), the Court explained the approach it used in determining whether a questioned act required the exercise of official discretion. Judge Bazelon stated:

> [I]n determining whether a particular government function falls within the scope of official immunity, it does not suffice to consider simply whether the officer has "discretion" in the sense that he exercises judgment in choosing among alternative courses of action. The proper approach is to consider the precise function at issue, and to determine whether an officer is likely to be unduly inhibited in the performance of that function by the threat of liability for tortious conduct.

(footnote omitted).

■ An improper motive, unworthy purpose or even malice on the part of a government official will not destroy the privilege of immunity so long as the official acts within the limits of his authority. *Barr v. Matteo,* 360 U.S. at 575, 79 S.Ct. 1335; *Tenney v. Brandhove,* 341 U.S. 367, 377, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). If an official is immune from civil liability, he is no less immune because the wrong complained of reaches constitutional dimensions. An attempt by a plaintiff to equate malice and bad faith to a failure of authority is precisely the rationale overruled by

*Barr v. Matteo.* Again, quoting from Judge Hand in *Gregoire v. Biddle, supra*:

> [T]he public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance, it has been thought in the end better to have unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

177 F.2d at 581.

In the present case, defendants have submitted affidavits which show that they are all present or former employees of the Department of Housing and Urban Development (HUD) who had some relationship to the plaintiff while he was employed with HUD. The decisions made by these officials involved the administration of HUD. Transfers of subordinate personnel were within the scope of their authority. If the defendants are subject to civil liability for actions taken in the course of such duties, they are likely to be inhibited by the constant threat of suit. A federal employee unhappy with a transfer or some other action taken will often be anxious to sue the official responsible for such decision. The threat of such litigation could tend to unduly inhibit the official in performing his official function because of the knowledge that any action adverse to an employee could result in a lengthy lawsuit which alleges an improper or unconstitutional motive. If, in fact, an official must answer each and every charge of wrongful conduct in performance of his duties, he would have to expend considerable time and energy in the preparation of affidavits, attending depositions, answering interrogatories and testifying at trial. These litigation activities would obviously detract greatly from the performance of his official duties. Officials such as the defendants in this case should be free to transfer subordinates whenever it seems necessary to do so without the constant threat of personal liability for their actions. This is precisely the type of protection that the official immunity doctrine was designed to afford.

■ In this case, however, plaintiff contends that the authority cited above is not controlling where as here the plaintiff alleges not just mere tortious conduct, but unconstitutional conduct as well. This argument is seen to be without merit when one looks to the result such rule would accomplish. Surely it cannot be said that the official immunity doctrine is not applicable whenever a plaintiff alleges a denial of a constitutional right. This runs absolutely contrary to the rationale behind the doctrine. *See Barr v. Matteo, supra.*

■ Plaintiff further contends that the mere submission of affidavits by an official to show that his conduct was within the scope of his official duties, is insufficient when such affidavits are contradicted. *See Howard v. Lyons,* 360 U.S. 593, 595–96, 79 S.Ct. 1331, 3 L.Ed. 2d 1454 (1959) (uncontradicted affidavits used to prove actions within the scope of official duty). This Court need not rule on that issue in the abstract since the plaintiff's "contradictory" affidavit does not in this Court's opinion effectively refute the fact that defendants acted within the scope of their authority. The plaintiff's reply affidavit points out numerous discrepancies in the affidavits of the defendants. If taken as true, it shows bad faith on the part of the government officials and even acts of overt discrimination. However, the reply affidavit does not effectively rebut the defendants' claim that plaintiff's transfer was effected by one who

had authority to do so. No *ultra vires* activity has been shown. Since bad faith, improper purpose and even malice have no effect on the immunity doctrine, so long as the government official acts within the limits of his authority, the allegations in the reply brief have no legal effect. *See Barr v. Matteo, supra; Tenney v. Brandhove, supra.*

Plaintiff cites *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), on remand, 456 F.2d 1339 (2d Cir. 1972), as authority for his position that there is now a positive federal action in a case where a federal constitutional right has been violated and the assertion of immunity is thereby precluded as a defense. This Court has no quarrel with the plaintiff's assertion that the Supreme Court in *Bivens* has recognized a right of action against federal officers that is roughly analogous to the right of action one would have against a state official under 42 U.S.C. § 1983 (1970). *See United States ex rel. Moore v. Koelzer,* 457 F.2d 892 (3d Cir. 1972); *Bethea v. Reid,* 445 F.2d 1163, 1166 (3d Cir. 1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 747, 30 L. Ed.2d 749 (1972). However, the Court does not believe that the Supreme Court's holding in *Bivens* requires that official immunity be nullified in a case involving the infringement of a constitutional right by a federal official acting within the scope of his authority and in the exercise of a discretionary function.

In *United States ex rel. Moore v. Koelzer,* 457 F.3d 892 (3d Cir. 1972), the Third Circuit confronted a situation in which the petitioner pleaded a valid *Bivens* type cause of action against an Assistant United States Attorney for an alleged violation of Moore's fifth amendment rights. The Assistant United States Attorney was held to be immune by virtue of the fact that he acted within his official capacity. The Court indicated that if immunity attaches, it does so prior to a consideration of the merits in the case. 457 F.2d at 894. The fact that a violation of a constitutionally protected right is involved is immaterial.

More recently, the Third Circuit in *Johnson v. Alldredge,* 488 F.2d 820 (3d Cir. 1973) considered a cause brought by a federal prisoner against a prison warden and a prison guard seeking damages for the alleged unconstitutional taking of legal materials. On an interlocutory appeal, the Court held that the guard was not immune because the actions of which he was accused were ministerial and not discretionary. The warden, however, was found to be immune by virtue of the fact that his actions in establishing prison policy involved the exercise of judgment and were within the outer perimeter of his authority. Again, immunity attached despite the fact that this was a constitutional claim. *See also Fidtler v. Rundle,* 497 F.2d 794, 802 (3d Cir. 1974), where this circuit suggested that in an action brought under 42 U.S.C. § 1983, it would be appropriate for the district court to preliminarily decide the issue of immunity, since a finding of immunity would obviate the need for further proceedings.

In light of the above, it is clear to this Court that plaintiff's contention that immunity does not attach in a case involving the infringement of a constitutional right is without merit. It is further evident that the transfer of plaintiff was within the scope of defendants' authority and embraced a function which required discretion. Therefore, the defendants' motion to dismiss is hereby granted without costs.

By the granting of defendants' motion in the present case, this Court is in no way condoning any of the incidents alleged herein. If such, in fact, exist to any degree, they are to be condemned and corrected. The Court assumes that at the very least the questioned activities will be subject to intensive administrative scrutiny.

So ordered.