Ivey L. **GARNER**, Jr., Plaintiff,

v.

Ralph N. **RATHBURN**, Defendant.

Civ. A. No. 8516.

United States District Court
D. Colorado.

Aug. 10, 1964.

Gorsuch, Kirgis, Campbell, Walker & Grover, Dwight D. Murphey, Denver, Colo., for plaintiff.

Lawrence M. Henry, U. S. Atty., and Edward Mulhall, Jr., Asst. U. S. Atty., Denver, Colo., for defendant.

DOYLE, District Judge.

The complaint herein alleges that plaintiff was an enlisted man in the United States Air Force at Lowry Air Force Base, and as such was a member of an asphalt-laying crew which was then pursuing street paving operations within the confines of Lowry Air Force Base. It is further alleged that the defendant was the civilian foreman of the military crew and that as such he negligently conducted the work operations of the group and negligently caused the use of defective equipment by the crew and as a result of his conduct plaintiff's leg was

run over, crushed and injured by an asphalt spreader.

The second claim contains allegations that the conduct of the defendant was wanton and reckless. However, these, in view the record herein, can be disregarded.

The defendant, represented by the United States Attorney, has moved to dismiss the complaint for failure to state a claim. By stipulation the parties have agreed that the motion to dismiss can be treated as a motion for summary judgment, apparently upon the basis that the threshold question of liability on the one hand, or immunity on the other, should be decided at the outset in interests of both of the parties.

Although the record has been supplemented somewhat so as to establish the important facts in the case, the exact wrongdoing of the defendant has not been shown. It is possible to make certain assumptions; for example, it would appear that the injury occurred in the course of routine street paving, or street repairing work. Thus, defendant is not alleged to have been exceeding his authority, or to have been acting outside the legitimate limits of his position. Indeed, one gets the impression that the only reason the defendant is named is because of his position in the chain of command.

It would appear that the plaintiff's injury resulted from a defective coupling on asphalt paving equipment whereby the equipment became detached from the truck which was pulling it. Seemingly, the fault of the defendant then would arise from failure to inspect the coupling and from assigning plaintiff to an unsafe place whereby the plaintiff was exposed to an unreasonable risk of harm.

Although the record is somewhat incomplete with respect to the causes of the injury, it is, on the other hand, very complete in describing the duties and responsibilities of the defendant. The position description shows that the de-

fendant supervises approximately 58 employees and does so through six crew leaders. These include various equipment operators, plus laborers. The defendant makes work assignments, ascertains that the personnel are on duty and are performing in a satisfactory manner, determines time requirements, equipment requirements, and does other planning. He is empowered to shift employees from one job to another, and he continuously reviews work in progress. Upon completion he ascertains whether required standards have been met. He also trains new employees, hires and fires workers, grants leaves, settles minor grievances and interprets regulations. He also has overall supervision of work and of the manner of carrying out the functions. It is thus apparent that the defendant's position, while calling for the performance of particular tasks, nevertheless demands that judgment and discretion be exercised in various ways.

The crucial issue here is whether, assuming that the injuries occurred substantially in accordance with the facts as above outlined, the defendant has a personal immunity from suit as well as judgment.

■ At the outset it is to be noted that plaintiff's injuries were incident to his service as a member of the Air Force and thus he is outside of the scope of the Federal Tort Claims Act. Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

■ Whether the defendant is immune from suit is to be determined by federal rather than state law. The Supreme Court has held that since the authority of a federal officer to act derives from federal sources, and since the scope and extent of the immunity is related to the functioning of the Federal Government, the presence or absence of immunity in a particular case is to be decided according to federal rather than state law. Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959).

See also Preble v. Johnson, 275 F.2d 275 (10th Cir. 1960).

Although the Supreme Court has not spoken on the question now before us, that is, whether the foreman of a road crew has immunity from suit, it has recognized that certain officers, at least, are immune from liability in tort. The leading case is Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). There the plaintiff sought recovery for alleged defamation by the Acting Director of the Rent Stabilization Office. The words complained of were contained in a press release which followed the release of a letter, apparently signed by the defendant, but actually signed by a secretary. In the press release the defendant repudiated the action of his subordinates and the question was whether this statement to the press was within the doctrine of officer immunity. In holding that it was, the Supreme Court said:

> "Judged by these standards, we hold that petitioner's plea of absolute privilege in defense of the alleged libel published at his direction must be sustained. The question is a close one, but we cannot say that it was not an appropriate exercise of the discretion with which an executive officer of petitioner's rank is necessarily clothed to publish the press release here at issue in the circumstances disclosed by this record. Petitioner was the Acting Director of an important agency of government, and was clothed by redelegation with 'all powers, duties, and functions conferred on the President by Title II of the Housing and Rent Act of 1947 * * *.' The integrity of the internal operations of the agency which he headed, and thus his own integrity in his public capacity, had been directly and severely challenged in charges made on the floor of the Senate and given wide publicity; and without his knowledge correspondence which could reasonably be read as impliedly defending a position very different from that which he had from the beginning taken in the matter had been sent to a Senator over his signature and incorporated in the Congressional Record. The issuance of press releases was standard agency practice, as it has become with many governmental agencies in these times. We think that under these circumstances a publicly expressed statement of the position of the agency head, announcing personnel action which he planned to take in reference to the charges so widely disseminated to the public, was an appropriate exercise of the discretion which an officer of that rank must possess if the public service is to function effectively. It would be an unduly restrictive view of the scope of the duties of a policy-making executive official to hold that a public statement of agency policy in respect to matters of wide public interest and concern is not action in the line of duty. That petitioner was not *required* by law or by direction of his superiors to speak out cannot be controlling in the case of an official of policy-making rank, for the same considerations which underlie the recognition of the privilege as to acts done in connection with a mandatory duty apply with equal force to discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority."

360 U.S. at 574–575, 79 S.Ct. at 341.

Thus the Supreme Court concluded that the defendant, although not required by law to speak out, was nevertheless performing his functions as Acting Director of the agency and, therefore, was entitled to protection. As a matter of fact, the immunity was held to be effective even as against the allegations that he acted maliciously.

If the test is whether the officer was exercising discretion or was acting in a

ministerial capacity, it could be argued that inasmuch as the defendant in Barr was the head of a government agency he could not be denied immunity, whereas the defendant here occupied no such position. However, in Barr, the Supreme Court spoke out on this subject, noting that the head of an executive department has broader protection than a subordinate administrative officer. The reason for this, it pointed out, is that the higher the post occupied the broader is the range of responsibilities and duties and the wider is the scope of discretion. The Court was careful to note, however, that the determinative test was not the title borne by an officer, but, rather, the duties with which the particular officer is entrusted. On this the Court remarked:

> "We do not think that the principle announced in Vilas can properly be restricted to executive officers of cabinet rank, and in fact it never has been so restricted by the lower federal courts. The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government. The complexities and magnitude of governmental activity have become so great that there must of necessity be a delegation and redelegation of authority as to many functions, and we cannot say that these functions become less important simply because they are exercised by officers of lower rank in the executive hierarchy."

360 U.S. at 572–573, 79 S.Ct. at 1340.

■ That the recognized test, at least in the federal courts, is whether the individual defendant was exercising a discretionary function would appear to be well settled. Thus, in Gregoire v. Biddle, 177 F.2d 579 (2 Cir. 1949), cert. denied 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363, the Court of Appeals for the Second Circuit, in an opinion by the late Judge Learned Hand, while pointing out that an important requisite of officer immunity is that the individual was acting within the scope of the powers

granted to him, nevertheless recognized the test to be whether he was exercising judicial or quasi-judicial functions. See also Prosser, Law of Torts (2d ed. 1955) § 109, at 781. That author states that the courts have developed a distinction between acts which are discretionary, or quasi-judicial, requiring personal deliberation, decision and judgment, and those which are merely ministerial, amounting only to an obedience to orders or the performance of a duty in which the officer is left no choice of his own.

Harper and James also recognize this distinction (2 Harper and James, The Law of Torts § 29.10).

These authors recommend that an evaluation be made by the court of the social benefit of compensation to the victim and the wholesome deterrence of official excess weighed against the evils which flow from inhibiting courageous and independent official action in deterring responsible citizens from entering public life. While recognizing that there are policy considerations inherent in the determination of liability in the case at bar, we are unwilling to concede that policy factors should determine the case. This "free-wheeling" approach would leave every case to the personal viewpoint of the trial judge. Admittedly, the discretionary-ministerial standard is unsatisfactory; nevertheless, it furnishes a more desirable basis than does the recommended policy weighing.

■ Counsel for plaintiff argues that a distinction should be made between an officer and an employee. He concedes than an officer would enjoy absolute immunity. Indeed, counsel concedes that if the supervisory functions here involved had been performed by a commissioned officer in the Air Force (even a Second Lieutenant or a Warrant Officer), absolute immunity would attach. In other words, he places stress upon the status of the person involved rather than upon the functions then being exercised. Such criteria as who issued his commission are, according to counsel for the defendant in his argument, the important cri-

teria. He has collected cases in which employees have been held liable and officers have been found to be immune, and from this, together with various authorities dealing with the distinction between office and employment, he concludes that this distinction should govern the case. Articles and annotations dealing with this distinction are cited. See 9 University of Florida Law Review 47 (1956), and annotations in 53 A.L.R. 595, 93 A.L.R. 333, and 140 A.L.R. 1076. These authorities are out of context and the use of the distinction urged could produce highly superficial and perhaps unjust or improper results. The only criterion that would appear to have any value is that of function. Thus, where, as in the case at bar, the defendant is engaged in the performance of duties which require the making of decisions and the exercise of judgment, he should not be held responsible for an act or omission clearly within the scope of his duties when made or done in the course of carrying out the mission assigned to him. The fact that the defendant here is a civilian employee rather than a commissioned officer cannot be regarded as significant. It would be anomalous indeed to hold him liable only because of his civilian status. Admission by defendant that a commissioned officer performing the same functions would be immune almost concedes that the duties of the defendant were discretionary rather than ministerial.

It is unnecessary to define or to give examples of *ministerial* functions since it sufficiently appears that the work of the defendant in the case at bar involved the exercise of judgment and discretion and that he was acting within the scope of his duties.

The defendant's motion to dismiss and for summary judgment should be, and the same is hereby granted. Plaintiff may within ten days file a written exception to the assumptions of fact which appear herein. Unless there is a serious quarrel with the facts as recited herein, judgment will be entered in favor of the defendant.