**Robert Lewis BELVEAL, Plaintiff,**

v.

**Harold E. BRAY et al., Defendants.**

**Civ. A. No. 9196.**

United States District Court
D. Colorado.

Jan. 3, 1966.

---

Cisneros & Huckeby, Denver, Colo., for plaintiff.

Yegge, Hall, Treece & Evans, Wesley H. Doan, White & Steele, Lowell White, Denver, Colo., for defendants Harold E. Bray, Charles Morris, Anthony Erosky, Charles Surratt, Frank Derby, Phillip Laurita, William Baughman, Newton Smith, George Paltier, and John Phillips.

Robert K. Willison, Golden, Colo., for defendant John R. Hunt.

Duke W. Dunbar, Atty. Gen., pro se, Frank E. Hickey, Deputy Atty. Gen., pro se, and John E. Bush, Asst. Atty. Gen., Denver, Colo., for defendants Harry C. Tinsley, Charles P. Chaves, Francis J. Knauss, John C. Casey, Hon. John A. Love, Hon. Robert L. Knous, Harry Brofman, and Archie Reeves.

Yegge, Hall, Treece & Evans, William D. Swenson, Denver, Colo., for defendants Edward Grout and Allan R. Urich.

Jerry C. Connell, Lakewood, Colo., for defendant Nancy R. Berkley.

WILLIAM E. DOYLE, District Judge.

This case arises under the Civil Rights Acts, Title 42 U.S.C.A., Sections 1981, 1983, and 1985, and the provisions of Title 28 U.S.C.A., Section 1343. Plaintiff alleges deprivation of constitutional rights resulting from misconduct of Harold E. Bray, sheriff of Jefferson County; several deputy sheriffs acting under Bray's authority; and Nancy R. Berkley. He also alleges misconduct on the part of: 1) Colorado State Parole Officer Allan R. Urich; 2) Colorado State Parole Board Executive Director Edward Grout; 3) Colorado State Penitentiary Warden Harry S. Tinsley (sic); 4) Dr. John R. Hunt; and 5) nine alleged mem-

bers of the Colorado State Parole Board. While the pertinent statute, 1963 CRS 39–18–1(1) (a), creates a seven-member Parole Board, the governor and attorney general may send alternates to Board meetings, which alternates are for such meetings deemed members.

Certain of the defendants have moved for dismissal on the ground of absolute immunity from civil suit. Thus the issue is whether the Board members, Warden Tinsley, and defendants Urich, Grout and Hunt are entitled to dismissal under the facts of this case as disclosed by the record and the applicable principles of law.

The following material facts are alleged, and for purposes of these preliminary motions must be deemed true. On January 13, 1964, Nancy Berkley conspired with Bray and his deputies to charge plaintiff Belveal with the crime of statutory rape. Belveal was "induced" to go to Jefferson County jail and was incarcerated there without reasonable cause and without a warrant. While confined, Belveal repeatedly requested medical treatment for a previously sustained severe leg injury. Dr. Hunt, prison physician, examined him and agreed that treatment was needed, but did not order his removal. Bray refused Belveal's requests to see his personal doctor; subsequently, Belveal underwent two surgical procedures.

On January 20, Belveal's bond was reduced so that he might be released to secure medical treatment. Bond was posted, but Bray and two deputies asked parole officer Urich to request revocation of Belveal's parole. Without investigation, Urich and Grout on February 25, suspended Belveal's parole and sent him to the State penitentiary. Urich and/or Grout prevailed upon the Parole Board to revoke Belveal's parole without a formal hearing. In his brief, counsel for plaintiff alleges that no quorum was present at that meeting.

Belveal was confined by Warden Tinsley until June 1, 1964. On June 17, he was acquitted of the alleged crime. Nevertheless, he was held in Jefferson County jail until June 24, and then returned and held in the State penitentiary until his release on July 1, effective March 28. Belveal contends that he was improperly and illegally incarcerated at all times subsequent to January 20, 1964; that each defendant conspired with or adopted and participated in illegal acts of other defendants, with malice; and that acting jointly or severally all defendants deprived him of fundamental constitutional rights.

■ Recognition of immunity for federal officials performing authorized quasi-judicial acts in the course of their official duty had its origin in the ancient principle that judges are absolutely immune from civil defamation or libel suits arising out of judicial proceedings. See dissenting opinion of Mr. Chief Justice Warren in Barr v. Matteo, 360 U.S. 564, 579, 79 S.Ct. 1335, 1344, 3 L.Ed.2d 1434 (1959). This protection from unwarranted harassment was first extended by the Supreme Court to heads of federal executive departments, Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896), and then to authorized statements of lesser officials, Barr v. Matteo, supra. In the latter case, the majority opinion described the underlying policy as follows:

"The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government. * * * we cannot say these functions become less important because they are exercised by officers of lower rank in the executive hierarchy." 360 U.S. at 572, 573, 79 S.Ct. at 1340.

Lower federal courts have not hesitated to expand both the scope and the nature of the immunity. See Preble v. Johnson, 275 F.2d 275, 10 Cir. 1960 (director of maintenance control program at a naval training center); Gamage v. Peal, N.D.Cal. 1962, 217 F.Supp. 384 (Air Force medical officers and contract psychiatrist immune from action for damages); Lang v. Wood, 1937, 67 App.D.C. 287, 92 F.2d 211, cert. denied, 302 U.S. 686, 58 S.Ct. 48, 82 L.Ed. 530 (1937)

(Defendants Attorney General, Parole Board members and others immune from suit alleging malicious parole revocation). Thus the principle is restricted neither to defamation or libel suits nor to officials in relatively high office.

■ This court, in Garner v. Rathburn, D.Colo. 1964, 232 F.Supp. 598, affirmed 346 F.2d 55, 10 Cir. 1965, found the absolute immunity principle applicable to a civilian foreman of an Air Force military maintenance crew engaged in performing official duties requiring the exercise of judgment. In affirming that decision, the Circuit Court commented:

"The federal standard of immunity indicates that officials of the Federal Government are not personally liable for alleged torts which result from acts done within the framework or scope of their duties which necessarily involve the exercise of discretion which public policy requires be made without fear of personal liability." 346 F.2d at 56.

Thus, we take the view that federal officials are immune from any form of civil liability arising out of the authorized performance of official judgment or discretionary functions. Allegations of malice, while sufficient to raise a cause of action in those few jurisdictions recognizing only a qualified privilege, do not defeat the absolute liability recognized by the great weight of federal decisions. See dissenting opinion of Mr. Justice Brennan in Barr v. Matteo, supra, 360 U.S. at 586, 79 S.Ct. at 1347.

■ In the absence of applicable state legislative or judicial decision, this case must be controlled by principles of federal law. Advancing the effective administration of state government is a no less important policy goal than securing fearless federal decision-making. The single relevant Colorado Supreme Court case brought to this Court's attention contains dicta suggesting that that court does not disfavor the federal rule. Elliott v. City of Fort Collins, 135 Colo. 558, 313 P.2d 316, 318 (1957).

It must be emphasized, however, that all the decisions finding absolute immunity from civil liability assume the presence of authorized official decision-making. A contrary rule would sanction flagrant violations of delegated responsibility in the name of efficiency.

■ Applying these principles to the various classes of defendants in the instant case, it is clear that the motions of Urich, Grout and Tinsley must be granted. Each performed a delegated discretionary act within his official capacity, on advice of other officials. The allegations of continuing or adopted conspiracy were, at the hearing, determined to be groundless.

The motion of Dr. Hunt must also be granted. He was acting solely within his capacity as prison doctor. There is no allegation that he improperly examined Belveal; indeed, he recommended treatment. Nor is it alleged that Dr. Hunt had any authority to do more than recommend special care.

■ The motion of the Parole Board, however, presents a different problem. The complaint alleges that the Parole Board acted without authority. At the hearing and in plaintiff's brief it was alleged that the decision to revoke Belveal's parole was reached in the absence of a quorum. While parole is clearly a privilege under Colorado law, the Board is authorized to act only in specified ways. It apparently did not so act here. It would hardly serve the purpose of more efficient government to apply the principle of absolute quasi-judicial immunity to acts not permitted by law. On this basis the case of Lang v. Wood, supra, is distinguished. Officials who act without the scope of their delegated authority must, at the least, proceed at their own risk.

It is to be noted that the complaint herein does not allege that the Parole Board acted without a quorum. This matter was first asserted in a brief of plaintiff. Nor does the complaint describe with particularity any other invalidity which attended the action of the Parole Board. Therefore, the complaint against these defendants must also be dismissed with leave to file an amended complaint. Fifteen days shall be the

period within which any amended complaint shall be filed. In sum, then, it is

ORDERED that the several motions be, and the same hereby, are granted, and the complaints against Urich, Grout, Tinsley and Dr. Hunt are dismissed. However, the motions addressed to the complaints against the members of the Parole Board are granted with leave to file an amended complaint within the time specified.