Arthur N. ECONOMOU and Arthur Economou & Co., Inc., Plaintiffs,

v.

Earl L. BUTZ, Secretary of Agriculture, Richard T. Lyng, Assistant Secretary of Agriculture, Alex C. Caldwell, Acting Administrator, Commodity Exchange Authority, Charles E. Robinson, Director, Compliance Division, Commodity Exchange Authority, Richard E. Kirchhoff, Deputy Director, Registration and Audit Division, Commodity Exchange Authority, Jack W. Bain, Chief Hearing Examiner, U. S. Department of Agriculture, Richard W. Davis, Jr., Counsel, U. S. Department of Agriculture, T. Reed McMinn, Regional Administrator, New York Regional Office, Commodity Exchange Authority, Clement Gross, Auditor, Commodity Exchange Authority, Murray A. Wolkis, Auditor, Commodity Exchange Authority, Edward F. Fitzpatrick, Auditor, Commodity Exchange Authority, and Donald A. Campbell, Judicial Official, U. S. Department of Agriculture, Defendants.

No. 72 Civ. 478 (LFM).

United States District Court, S. D. New York.

March 13, 1979.

---

David C. Buxbaum, P. C., New York City, for plaintiffs.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, by Frederick P. Schaffer, Asst. U. S. Atty., New York City, for defendants.

## OPINION

MacMAHON, District Judge.

Defendants move to dismiss the verified amended complaint for failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment. Rules 12(b)(6), 56(b), Fed.R.Civ.P. Plaintiffs move for an order compelling answers to interrogatories and precluding defendants from introducing evidence for wilful failure to attend a deposition and produce documents. Rules 37(a)(2), 37(b)(2), Fed.R. Civ.P.

On February 2, 1972, plaintiffs commenced this action against the United States Department of Agriculture ("USDA"), the Commodities Exchange Authority ("CEA") and twelve individual employees of the USDA and the CEA. Plaintiffs, Arthur N. Economou, a former registered futures commission merchant, and Arthur N. Economou & Co., Inc.,[1] had been

1. Although plaintiffs argue that the American Board of Trade, Inc. ("American Board") is still a party to this action, there is nothing in the decisions of either the Court of Appeals or the Supreme Court which reverses our decision dismissing the verified amended complaint with respect to American Board. Additionally, plaintiffs did not contest the dismissal with

the subjects of a disciplinary proceeding commenced by the CEA on February 19, 1970. On appeal from the administrative order, the sanctions imposed at the CEA proceeding were set aside on the ground that plaintiffs had not wilfully violated the CEA rules and regulations.[2] Plaintiffs now allege that the CEA proceeding was maliciously commenced and continued in violation of their constitutional and common law rights.

We dismissed the complaint on May 22, 1975 as to all defendants on grounds of sovereign and executive immunity. Our Court of Appeals affirmed with respect to the USDA and the CEA but reversed with respect to the individual defendants on the ground that they were not entitled to absolute immunity for so-called constitutional torts.[3] The Supreme Court subsequently vacated the decision of the Court of Appeals and remanded the case, holding that "in a suit for damages arising from unconstitutional action, federal executive officials exercising discretion are entitled only to the qualified immunity specified in *Scheuer* [*v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)], subject to those exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of the public business."[4]

 We dismiss the complaint as to defendant Butz. Butz did not become Secretary of Agriculture until December 2, 1971, more than twenty-one months after the CEA proceeding was commenced, and plaintiffs neither allege nor show that Butz personally participated in the commencement or continuation of the CEA proceeding or that he ratified the actions of the other defendants in any way. Since a plaintiff may not rely on the general doctrine of respondeat superior in actions against government officials,[5] we conclude that plaintiffs have failed to allege or show any connection between Butz and their alleged injury.

Defendant Bain died during the pendency of this action, and the parties have stipulated to discontinue the action as to him. We, therefore, dismiss the complaint as to defendant Bain.

### Defendants' Motion for Summary Judgment

Plaintiffs' complaint alleges six claims for violation of their common law rights and four for violation of their constitutional rights. All of the remaining defendants ("defendants") seek summary judgment on the common law claims on the ground of official immunity[6] and, except for defendants Gross and Fitzpatrick, seek the same relief for the same reason on the constitutional claims.

 All public officials enjoy absolute immunity from suit for common law torts provided their acts were discretionary and within the outer perimeter of their line of duty.[7] Malice is immaterial.[8] The absolute

respect to American Board in their briefs before the Court of Appeals.

2. *Economou v. U.S. Dep't of Agriculture*, 494 F.2d 519 (2d Cir. 1974).

3. *Economou v. U.S. Dep't of Agriculture*, 535 F.2d 688 (2d Cir. 1976).

4. *Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978).

5. *Black v. United States*, 534 F.2d 524, 528 (2d Cir. 1976).

6. The decisions of both the Court of Appeals and the Supreme Court in this case only considered plaintiffs' constitutional claims. *Butz v. Economou, supra*, 98 S.Ct. at 2905 n.22. Neither decision considered nor affected the

law of official immunity from suit for common law torts. *Birnbaum v. United States*, 588 F.2d 319, 322 (2d Cir. 1978); *Granger v. Marek*, 583 F.2d 781, 784 (6th Cir. 1978).

7. *Barr v. Matteo*, 360 U.S. 564, 575, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Spalding v. Vilas*, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896); *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949) (Learned Hand, J.), *cert. denied*, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). State law of official immunity is immaterial in actions against federal officials. *Howard v. Lyons*, 360 U.S. 593, 597, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959).

8. *Butz v. Economou, supra*, 98 S.Ct. at 2904, explaining *Spalding v. Vilas, supra*.

immunity for constitutional torts, however, is limited according to the teaching of the Supreme Court in this case to three classes of federal officials: (1) "persons . . . performing adjudicatory functions within a federal agency;"[9] (2) "agency officials performing . . . functions analogous to those of a prosecutor;"[10] and (3) "agency attorn[ies] who [arrange] for the presentation of evidence on the record in the course of an adjudication."[11]

Our initial inquiry is thus directed to the nature of defendants' acts, and this is so as to both the common law and constitutional claims asserted here.

In support of their motion for summary judgment, defendants submit affidavits, answers to interrogatories and a statement of their version of undisputed facts, pursuant to local Rule 9(g).[12] It appears from these documents that, pursuant to an amendment to the Commodity Exchange Act in 1968,[13] the Secretary of Agriculture prescribed minimum financial requirements for all persons registered or seeking registration as futures commission merchants.

On March 19, 1969, the CEA sent letters to all registered futures commission merchants requiring the filing of initial financial statements by March 31, 1969. On reviewing the financial statement submitted by plaintiff Arthur N. Economou & Co., Inc., the Director of the Registration and Audit Division of the CEA concluded that some of the current assets claimed by plaintiff were questionable and ordered that plaintiff be audited.[14]

Plaintiff was audited in 1969 by defendant Fitzpatrick, a CEA auditor.[15] His audit report was then reviewed by defendants Wolkis, the Chief of the Registration and Audit Branch of the CEA for the Eastern Region;[16] McMinn, Director of the Eastern Region of the CEA;[17] Caldwell, Administrator of the CEA;[18] Kirchhoff, Deputy Director of the CEA Registration and Audit Division;[19] and Robinson, the Director of the CEA's Compliance Division,[20] all of whom recommended the commencement of a disciplinary proceeding.

Defendant Lyng, Assistant Secretary of Agriculture, subsequently reviewed the audit report, found that plaintiff was in wilful violation of the financial requirements established for futures commission merchants and on February 19, 1970 commenced the disciplinary proceeding at issue in this case without issuing a prior warning letter.[21]

**9.** *Butz v. Economou, supra*, 98 S.Ct. at 2915.

**10.** *Id.*

**11.** *Id.* at 2916.

**12.** Rule 9(g) of the General Rules for the United States District Courts for the Southern and Eastern Districts of New York.

**13.** Pub.L. No. 90–258, 82 Stat. 28 (1968) (current version at 7 U.S.C. § 6f(2) (1976)).

**14.** Davis' affidavit at ¶ 3; Statement pursuant to Rule 9(g) at ¶ 2.

**15.** Davis' affidavit at ¶¶ 3, 12; Statement pursuant to Rule 9(g) at ¶ 3; Caldwell's, Fitzpatrick's, Gross', McMinn's, Robinson's and Wolkis' answers to Interrogatory No. 1.

**16.** Davis' affidavit at ¶ 13; Statement pursuant to Rule 9(g) at ¶ 3; Caldwell's answer to Interrogatory Nos. 1, 11, 12; Davis' answers to Interrogatories Nos. 1, 11, 12; Fitzpatrick's and McMinn's answers to Interrogatory No. 1; Robinson's answer to Interrogatory No. 11; Wolkis' answer to Interrogatories Nos. 1, 7.

**17.** Davis' affidavit at ¶¶ 3, 12; Statement pursuant to Rule 9(g) at ¶ 4; Davis' answers to Interrogatories Nos. 11, 12.

**18.** Davis' affidavit at ¶ 6; Statement pursuant to Rule 9(g) at ¶ 4; Caldwell's answer to Interrogatory No. 15; Davis' answers to Interrogatories Nos. 11, 12; Robinson's answer to Interrogatory No. 11.

**19.** Davis' affidavit at ¶¶ 3, 8; Statement pursuant to Rule 9(g) at ¶ 4; Caldwell's answer to Interrogatory No. 15; Davis' answers to Interrogatories Nos. 11, 12; Robinson's answer to Interrogatory No. 11.

**20.** Davis' affidavit at ¶ 7; Statement pursuant to Rule 9(g) at ¶ 4; Caldwell's answer to Interrogatory No. 15; Davis' answers to Interrogatories Nos. 11, 12; Robinson's answer to Interrogatory No. 11.

**21.** Davis' affidavit at ¶ 5; Statement pursuant to Rule 9(g) at ¶ 4; Caldwell's answer to Interrogatory No. 15; Campbell's answer to Interrogatory No. 11; Davis' answers to Interroga-

Since nearly a year had elapsed since the initial audit of plaintiff's financial records, defendant Gross, another CEA auditor, was directed by the USDA's Office of General Counsel to audit plaintiff again in 1970.[22]

A hearing was held on the complaint in August 1970 at which defendants Fitzpatrick, Gross, McMinn and Kirchhoff testified and defendant Davis,[23] an attorney from the USDA's Office of General Counsel, presented the government's case. Defendant Campbell, a USDA Judicial Officer, subsequently issued a final order and decision based on the Hearing Examiner's report.[24]

■ The affidavits and the answers to the interrogatories are based on personal knowledge. Plaintiffs have not submitted an opposing Rule 9(g) statement giving their version of undisputed facts. We therefore deem the facts set forth in defendants' 9(g) statement as admitted.[25]

■ Since defendants have made a factual showing that no genuine issue exists regarding the acts performed by them, plaintiffs must either come forward with evidence that tends to show that an issue of fact exists [26] or explain why they are presently unable to come forward with such evidence.[27] We find that plaintiffs have satisfied neither alternative.

■ Plaintiffs submit two affidavits of Arthur N. Economou in which he complains that the disciplinary proceeding was commenced "without any prior warning to the plaintiffs, either written or otherwise." [28] He also avers that the auditors were "rude and insulting" [29] and states in conclusory language that defendants acted maliciously and for retaliatory reasons. Bald conclusions in response to defendants' definite statement of facts do not create a genuine issue of fact. Moreover, neither of the Economou affidavits makes any showing whatsoever that defendants performed any act other than those described above.

Nor have plaintiffs made any showing that there is a reasonable probability that further discovery would disclose any evidence sufficient to create a genuine issue of fact regarding the acts performed by defendants, or that defendants' affidavits and answers to the interrogatories are untrue or incomplete, or that there are other witnesses who would have knowledge of the acts performed by defendants, or that the use of other discovery methods would disclose evidence sufficient to create a genuine issue of fact.

Thus, defendants have presented uncontradicted evidence regarding the acts performed by them. Since a " 'vague hope' " [30] that contradictory evidence will subsequently be discovered is insufficient to defeat a motion for summary judgment, we conclude that defendants have established that there is no genuine issue as to any fact material to defendants' defense of immunity.

tories Nos. 11, 12; Robinson's answer to Interrogatory No. 11.

**22.** Davis' affidavit at ¶¶ 3, 12; Statement pursuant to Rule 9(g) at ¶ 6; Caldwell's, Gross', Fitzpatrick's, McMinn's, Robinson's and Wolkis' answers to Interrogatory No. 1.

**23.** Davis' affidavit at ¶ 3, 10; Statement pursuant to Rule 9(g) at ¶ 8.

**24.** McMinn's affidavit; Statement pursuant to Rule 9(g) at ¶ 8, 9.

**25.** The third paragraph of Rule 9(g) provides: "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

**26.** *S. E. C. v. Research Automation Corp.*, 585 F.2d 31, 35 (2d Cir. 1978).

**27.** Rule 56(f), Fed.R.Civ.P.

**28.** Economou affidavit of December 4, 1978 at ¶ 29.

**29.** Economou affidavit of December 4, 1978 at ¶ 19.

**30.** *Modern Home Inst., Inc. v. Hartford Acc. & Indem. Co.*, 513 F.2d 102, 110 (2d Cir. 1975), quoting *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969). See *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289–90, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Dyer v. MacDougall*, 201 F.2d 265, 268–69 (2d Cir. 1952).

We turn now to determine whether defendants enjoy immunity as a matter of law.

### Immunity from Common Law Torts

As was stated above, if defendants establish that their acts were within the outer perimeter of their lines of duty and discretionary, the privilege of absolute immunity is applicable to the common law claims whether or not plaintiffs' claims of malice are true.[31]

▮ Clearly, the acts of all defendants were well within the outer perimeter of their respective lines of duty. The auditors, Gross and Fitzpatrick, had the duty and authority to conduct an audit of plaintiff's financial records, as directed by their superiors, and to report on their findings as well as to testify to the results of their audit.[32]

Defendant Wolkis, as Chief of the CEA's Registration and Audit Branch for the Eastern Region and later as its Chief of the Compliance Branch for the Eastern Region, had the authority to review the results of the audit and to recommend the commencement of a disciplinary proceeding.[33]

Defendant McMinn, Director of the Eastern Region of the CEA, had the authority to review the results of the audit, to recommend the commencement of a disciplinary proceeding and to assist in the presentation of the government's case at the CEA proceeding.[34]

Defendant Caldwell, Administrator of the CEA, had the authority to administer and enforce the Commodity Exchange Act and, thus, had clear authority to review the audit of plaintiff's financial records and to recommend the commencement of a disciplinary proceeding.[35]

Defendant Kirchhoff, Deputy Director of the Registration and Audit Division, had the authority to review the audit of plaintiff's financial records, to recommend the commencement of a disciplinary proceeding and to testify at the CEA proceeding.[36]

Defendant Robinson, Director of the Compliance Division, had the authority to review the audit of plaintiff's financial records and to recommend the commencement of a disciplinary proceeding.[37]

Defendant Lyng, the lawful delegate of the Secretary of Agriculture, had the authority to review the results of the audit of plaintiff's financial records and to commence the CEA proceeding.[38]

Defendant Davis, as general counsel to the USDA, had the duty and authority to represent the CEA at the CEA proceeding.[39]

And defendant Campbell, as a Judicial Officer of the USDA, had the duty and authority to issue a final order based on the Hearing Examiner's findings.[40]

It is also clear that the acts of defendants in this case involved the use of discretion. Defendants Lyng, Caldwell, Robinson, Kirchhoff, McMinn and Wolkis had the general duty of enforcing the provisions of the Commodity Exchange Act by bringing appropriate administrative proceedings. Thus, their duties were closely analogous to those of a prosecutor in deciding whether to bring criminal proceedings against a defendant, and courts have uniformly held that the decision to prosecute is discretionary.[41]

The duties of defendants Davis and Campbell were also discretionary. Davis determined the manner in which the

---

**31.** See text accompanying notes 7–8, *supra.*

**32.** See 17 C.F.R. § 140.1(c)(1) (1971).

**33.** See 17 C.F.R. § 140.2 (1971).

**34.** See *Id.*

**35.** See 17 C.F.R. § 140.1(b) (1971).

**36.** See 17 C.F.R. § 140.1(c)(1) (1971).

**37.** See 17 C.F.R. § 140.1(c)(2) (1971).

**38.** See 17 C.F.R. § 0.3(c) (1971).

**39.** See 7 U.S.C. § 2214.

**40.** See 5 U.S.C. §§ 557, 558.

**41.** *Inmates of Attica Correctional Facility v. Rockefeller*, 477 F.2d 375 (2d Cir. 1973).

government's case was presented at the CEA proceeding. Campbell, as Judicial Officer, undoubtedly performed a discretionary function. It was his duty to evaluate all the evidence presented and to determine the final outcome of the CEA proceeding.

Finally, the auditors' duties were discretionary. It was their duty to examine the financial records of plaintiff and to make an independent judgment with respect to whether plaintiff was in compliance with the financial requirements established by the Secretary of Agriculture. Thus, their duties did involve the use of discretion.

■ Against this array, plaintiffs argue that the commencement of the CEA proceeding without the customary warning letter [42] constituted an act beyond the outer perimeter of defendants' authority and that defendants are not, therefore, entitled to absolute immunity. This argument is without merit.

■ The commencement of the CEA proceeding without the customary warning letter was the result of defendants' determination that plaintiff was wilfully failing to comply with the CEA's financial requirements. Although the Court of Appeals subsequently found that the determination of wilfulness was erroneous, it does not follow that defendants' acts were not within the outer perimeter of their authority.

■ An act is within the outer perimeter of an official's authority so long as it is more or less connected with the general matters committed by law to the official's control or supervision,[43] and the mere fact that an official errs in the exercise of his discretion does not render his acts unauthorized.[44] The basic premise of the doctrine of official immunity is that govern-

ment officials will, at times, err in the exercise of their authority. To hold that an error of judgment, without more, causes an official's acts to be beyond the outer perimeter of his authority is to destroy the entire doctrine of official immunity. Thus, the mere fact that defendants may have erred in commencing the CEA proceeding without a warning letter is immaterial to their claim of immunity.

We conclude, therefore, that defendants are entitled to summary judgment on the second, sixth, seventh, eighth, ninth and tenth claims of the verified amended complaint on the ground of official immunity.

### Immunity from Constitutional Torts

■ As we have seen,[45] three classes of agency officials are entitled to absolute immunity from constitutional torts: agency officials whose function is analogous to that of a prosecutor; agency attorneys who arrange for the presentation of the government's case in the course of an administrative proceeding; and agency officials performing adjudicatory functions.

Defendants Wolkis, McMinn, Caldwell, Kirchhoff, Robinson and Lyng all reviewed the reports of the audit of plaintiff's financial records and participated in the decision to commence the CEA proceeding. We conclude, therefore, that all of these defendants performed discretionary functions analogous to those of a prosecutor and are entitled to absolute immunity from suit for constitutional torts.

Defendant Davis prepared and presented the government's case at the CEA proceeding. We conclude, therefore, that his actions were limited to presenting the government's case in the course of an administra-

---

**42.** 17 C.F.R. § 0.3(c) (1971) provides, in pertinent part:

"[I]n any case, except one of wilfulness or one in which the public health, interest or safety otherwise requires, prior to the institution of a proceeding for the suspension or revocation of a registration or license, facts or conditions which may warrant such action shall be called, in writing, to the attention of the person complained against and such person shall be accorded opportunity to demon-

strate or achieve compliance with all lawful requirements."

**43.** *Spalding v. Vilas, supra,* 161 U.S. at 498, 16 S.Ct. 631; *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 456 F.2d 1339, 1343 (2d Cir. 1972).

**44.** *Gregoire v. Biddle, supra,* 177 F.2d at 581.

**45.** See text accompanying notes 9–11, *supra.*

tive proceeding and that he is entitled to absolute immunity from suit for constitutional torts.

Finally, defendant Campbell did no more than decide the merits of the CEA proceeding. We conclude, therefore, that he performed an adjudicatory function and is entitled to absolute immunity from suit for constitutional torts.

Thus, we conclude that defendants Wolkis, McMinn, Caldwell, Kirchhoff, Robinson, Lyng, Davis and Campbell are entitled to summary judgment on the first, third, fourth and fifth claims of the verified amended complaint on the ground of official immunity.

### Remaining Constitutional Claims

We are now left with four constitutional claims against defendants Gross and Fitzpatrick, the CEA auditors. These claims allege: (1) that the commencement of the CEA proceeding was unauthorized and violated plaintiff's right to due process under the Fifth Amendment; (2) that the proceeding was commenced in retaliation for plaintiffs' criticism of the CEA and, thus, chilled plaintiffs' First Amendment right to freedom of speech; (3) that furnishing the press with a statement and a copy of the complaint in the CEA proceeding violated plaintiffs' rights of privacy and due process; and (4) that the issuance of a deceptive press release violated plaintiffs' rights to due process and impaired plaintiffs' credit standing and the willingness of plaintiffs' customers to do business with plaintiffs.

Gross and Fitzpatrick contend that they are entitled to summary judgment on these claims because they did not make the decisions to commence or continue the CEA proceeding, or, in the alternative, that these allegations do not state constitutional claims upon which relief can be granted. Gross and Fitzpatrick do not contend that they are immune from these claims.

Plaintiffs contend that Gross and Fitzpatrick deliberately falsified the results of their audits in an effort to cause the commencement of the CEA proceeding. This contention, if proven, would establish a sufficient causal connection between the acts of Gross and Fitzpatrick and the commencement and continuation of the CEA proceeding.[46] Since neither plaintiffs nor defendants have submitted any factual evidence regarding the accuracy or falsity of Gross' and Fitzpatrick's audits, we deny Gross' and Fitzpatrick's motion for summary judgment without prejudice.

Defendants' motion to dismiss, however, presents more difficult questions. In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,*[47] the Supreme Court held that a plaintiff may recover damages from federal agents upon proof of injuries resulting from the agents' violation of plaintiff's Fourth Amendment rights. Plaintiffs contend that we should extend *Bivens* to imply a right of action against federal officers for alleged injuries to plaintiffs resulting from the officers' alleged violation of plaintiffs' rights under the First and Fifth Amendment. Mere "artful pleading"[48] of a constitutional violation, however, will not suffice, for, as the Supreme Court stated in this case, "[u]nless the complaint states a compensable claim for relief under the Federal Constitution, it should not survive a motion to dismiss."[49]

Plaintiffs' first, third and fourth claims do not state compensable claims under the federal Constitution. First, the primary injury asserted in these claims is damage to plaintiffs' reputations. However, injury to reputation alone does not implicate any "liberty" or "property" interest sufficient to invoke the procedural protection of the Due Process Clause.[50]

---

**46.** W. Prosser, Torts § 119 at 837 (4th ed. 1971).

**47.** 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**48.** *Butz v. Economou, supra,* 98 S.Ct. at 2911.

**49.** *Id.*

**50.** *Paul v. Davis,* 424 U.S. 693, 710, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Federal Trade Comm'n v. Cinderella Career & Finishing Schools, Inc.,* 131 U.S.App.D.C. 331, 338, 404 F.2d 1308, 1315 (1968).

Second, even if we assume that an injury to one of plaintiffs' "liberty" or "property" interests did occur, no right of action for damages exists under the Due Process Clause. In *Paul v. Davis,*[51] the Supreme Court stated that:

> "[Respondent] believes that the Fourteenth Amendment's Due Process Clause should *ex proprio vigore* extend to him a right to be free of injury wherever the State may be characterized as the tortfeasor. But such a reading would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States. We have noted the 'constitutional shoals' that confront any attempt to derive from congressional civil rights statutes a body of general federal tort law, *Griffin v. Breckenridge,* 403 U.S. 88, 101–02, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *a fortiori,* the procedural guarantees of the Due Process Clause cannot be the source for such law."

Since the Due Process Clause of the Fifth Amendment affords a citizen no greater protection from federal action than the Due Process Clause of the Fourteenth Amendment affords from state action,[52] we think *Paul v. Davis* teaches that the Due Process Clause of the Fifth Amendment cannot be the source of a general body of tort law in actions against federal officers.[53]

Finally, we find that plaintiffs were not denied due process. There is no dispute that plaintiffs had notice of the CEA proceeding and were given an opportunity to present their case. They also had the right to appeal from the CEA decision and, indeed, succeeded in setting aside the CEA sanctions on appeal. Thus, plaintiffs were accorded adequate procedural protections.[54]

Plaintiffs' remaining claim, Count 3, alleges a violation of the First Amendment. In essence, plaintiffs claim that defendants commenced and continued the CEA proceeding in retaliation for plaintiffs' criticism of the CEA. Plaintiffs further allege that this had a chilling effect on their First Amendment rights by causing them to expend time and money to defend the CEA proceeding.

Our Court of Appeals has not yet decided whether a civil claim for relief exists directly under the First Amendment.[55] Although we agree with the proposition that "[c]ourts should only create a cause of action where none exists or the need for one is demonstrated,"[56] we find that plaintiffs' allegations do justify the creation of a right of action here.

Plaintiffs claim that they were unjustifiably subjected to the expense and inconvenience of a groundless administrative proceeding because they criticized the policies of a federal agency. It cannot be questioned that criticism of governmental agencies is protected speech under the First Amendment.[57] Nor can there be any doubt that the institution of groundless administrative proceedings in retaliation for critical speech would be a violation of the First Amendment. Although the subject of such a proceeding would have the right to judicial review of any sanctions imposed by the

**51.** *Paul v. Davis, supra,* 424 U.S. at 701, 96 S.Ct. at 1160.

**52.** See *Bowles v. Willingham,* 321 U.S. 503, 518, 64 S.Ct. 641, 88 L.Ed. 892 (1944).

**53.** See also *Davis v. Passman,* 571 F.2d 793 (5th Cir.), *cert. granted,* —— U.S. ——, 99 S.Ct. 308, 58 L.Ed.2d 318 (1978).

**54.** See *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 611, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).

**55.** *Holodnak v. Avco Corp.,* 514 F.2d 285, 292 (2d Cir.), *cert. denied,* 423 U.S. 892, 96 S.Ct. 188, 46 L.Ed.2d 123 (1975); *Wahba v. New York Univ.,* 492 F.2d 96, 103 (2d Cir.), *cert. denied,* 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974).

**56.** *Turpin v. Mailet,* 579 F.2d 152, 166 (2d Cir.), *vacated and remanded on other grounds,* —— U.S. ——, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978).

**57.** *Mills v. Alabama,* 384 U.S. 214, 218, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966); *New York Times Co. v. Sullivan,* 376 U.S. 254, 269, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

administrative proceeding,[58] the power of the reviewing court would be limited to setting aside the sanctions, and it could not provide compensation for any actual damages suffered as a result of the proceeding.

■■■ Moreover, the alleged unconstitutional motivation would not be a defense to the administrative proceeding. Plaintiffs in this case attempted to raise the issue before Campbell, the USDA Judicial Officer, and he dismissed the argument as immaterial.[59] Thus, for people in plaintiffs' situation, no adequate alternative remedy exists, and to refuse to imply a right of action would make freedom of speech a right that "exists in principle but not in fact." [60]

■ Additionally, we do not think that the existence of a possible common law claim for malicious prosecution in this case is sufficient reason for refusing to imply a right of action for damages. Under New York law, plaintiffs here would not be able to state a claim for malicious prosecution because the CEA proceeding did not involve any provisional remedy such as arrest, attachment or preliminary injunction.[61] And, as Mr. Justice Harlan pointed out in Bivens, the existence of a possible remedy under state tort law should not preclude the creation of federal remedies for the violation of federal rights.[62]

Creation of a right of action in this case will not create unmanageable problems of judicial administration. Plaintiffs' claim closely resembles the common law tort of malicious prosecution, and, thus, the elements that plaintiffs must prove are well established.[63] Additionally, the experience of the federal courts in dealing with actions brought under 42 U.S.C. § 1983 (1976) provides guidance in establishing what plaintiffs must prove with respect to the constitutional aspect of their case and what damages are recoverable.

For example, in *Mount Healthy Bd. of Education v. Doyle*,[64] the Supreme Court held that a non-tenured school teacher may recover damages for being fired in retaliation for the exercise of his First Amendment rights if he can prove that the retaliatory motive was the "motivating factor" for the action taken.

In *Carey v. Piphus*,[65] the Supreme Court held that in the absence of actual damages, only nominal damages are recoverable for a violation of plaintiff's rights under the Due Process Clause.

In *Davis v. Village Park II Realty Co.*,[66] a tenant in a federally-funded housing project brought an action for damages for the commencement of an eviction proceeding in alleged retaliation for her criticism of management. Our Court of Appeals reversed the trial court's dismissal of the complaint, held that plaintiff had stated a valid claim and stated that the decisions in *Mount Healthy* and *Carey* governed what elements she would have to prove and what damages are recoverable.

Finally, we note that other circuits have implied a right of action for damages under the First Amendment where demonstrators were illegally arrested,[67] where the FBI gathered data and established a file on a

---

**58.** 5 U.S.C. § 702 (1976).

**59.** *In re Economou*, 32 Agric. Dec. 14, 108 (1973).

**60.** *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 513, 89 S.Ct. 733, 740, 21 L.Ed.2d 731 (1969).

**61.** *Burt v. Smith*, 181 N.Y. 1, 73 N.E. 495 (1905).

**62.** *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, supra*, 403 U.S. at 409, 91 S.Ct. 1999 (Harlan, J., concurring).

**63.** See generally W. Prosser, Torts §§ 119–120 (4th ed. 1971).

**64.** 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

**65.** 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

**66.** 578 F.2d 461 (2d Cir. 1978).

**67.** *Dellums v. Powell*, 184 U.S.App.D.C. 275, 302–303, 566 F.2d 167, 194–95 (1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978).

plaintiff who had requested material from the Socialist Workers' Party for a school research project,[68] and where an employee of a federally-funded employer was threatened with firing for criticizing the fluoridation of water.[69] Thus, although we are taking a large step in implying a right of action for damages under the First Amendment, our action is not without precedent.

We conclude, therefore, that plaintiffs' verified amended complaint does state one sufficient claim for relief against defendants Gross and Fitzpatrick.

### Plaintiffs' Discovery Motions

At a pretrial conference held on July 19, 1978, we limited plaintiffs' discovery until further order of the court to written interrogatories to be answered by defendants. Since plaintiffs have made no application for an order directing further discovery, their notice to take defendants' depositions and request for production of documents are, therefore, premature and are hereby vacated. Plaintiffs' motion for an order precluding defendants from introducing evidence is denied in all respects.

Plaintiffs' motion to compel further answers to their interrogatories is also denied. Plaintiffs object to the fact that some of the defendants state that they do not know the answers to the questions posed or that they do not remember the information requested. However, Rule 33, Fed.R.Civ.P., does not require an individual party upon whom interrogatories are served to make inquiry as to facts.[70] Moreover, most of the information sought by the interrogatories relates to events which took place approximately nine years ago, and defendants' answers, therefore, are not evasive or untrue on their face.

ACCORDINGLY:

(1) All claims of the verified amended complaint against defendants Butz and Bain are dismissed.

(2) The motion of defendants Davis, Campbell, Wolkis, McMinn, Kirchhoff, Robinson, Caldwell, Lyng, Gross and Fitzpatrick for summary judgment in their favor is granted on the second, sixth, seventh, eighth, ninth and tenth claims of the verified amended complaint.

(3) The motion of defendants Davis, Campbell, Wolkis, McMinn, Kirchhoff, Robinson, Caldwell and Lyng for summary judgment in their favor is granted on the first, third, fourth and fifth claims of the verified amended complaint.

(4) The motion of defendants Gross and Fitzpatrick for summary judgment in their favor on the first, third, fourth and fifth claims of the verified amended complaint is denied without prejudice to renewal within twenty (20) days upon a sufficient showing.

(5) The motion of defendants Gross and Fitzpatrick to dismiss is granted as to the first, fourth and fifth claims of the verified amended complaint and is denied with respect to the third claim.

(6) Plaintiffs' motion for an order precluding defendants from introducing evidence for failure to attend a deposition and produce documents is denied in all respects.

(7) Plaintiffs' motion for an order compelling further answers to interrogatories is denied in all respects.

So ordered.

---

**68.** *Paton v. LaPrade*, 524 F.2d 862, 869–71 (3d Cir. 1975).

**69.** *Yiamouyiannis v. Chemical Abstracts Serv.*, 521 F.2d 1392, 1393 (6th Cir. 1975).

**70.** 4A J. Moore & J. Lucas, Federal Practice ¶ 33.26 at 33–145 (1978).