Lori PATON, a minor under 18, suing by her father, Arthur Paton, Plaintiffs,

v.

J. Wallace LaPRADE, Special Agent in Charge, Federal Bureau of Investigation, Newark, New Jersey, John Patrick Devlin, Peter McDede, Jr., John Hugh Bryan, Agents for the Federal Bureau of Investigation, and Clarence M. Kelley, The Director of the Federal Bureau of Investigation, Postmaster General, United States Postal Service, Defendants.

No. 73–1091.

United States District Court, D. New Jersey.

May 1, 1979.

---

**168**

Frank Askin, Rutgers School of Law, Constitutional Litigation Clinic, Newark, N. J., for plaintiffs.

Carolyn Arch, Asst. U. S. Atty., Dept. of Justice, Newark, N. J., David White, U. S. Dept. of Justice, Washington, D. C., for defendants.

## OPINION

WHIPPLE, District Judge.

### I. *Introduction*

This action, filed July 24, 1973, is for damages and equitable relief on account of alleged illegal and unconstitutional investigative activity by the defendants. It is presently before the Court on cross-motions for summary judgment. These motions represent the continuing efforts of counsel to narrow the issues to be presented as the trial date rapidly approaches. As a result there are a considerable number of issues presented upon which this Court shall rule.

At the threshold a brief statement of the nature and purpose of summary judgment is in order. Fed.R.Civ.P. 56 prescribes the procedural device for disposing of actions in which there is no genuine issue as to any material fact. 6 Moore's Federal Practice ¶ 56.04[1], at pp. 56–63. If there is no such genuine issue a court should render summary judgment, if, however, there is a genuine issue as to a material fact, this must be resolved by a trier of fact at trial. *See generally, Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Taylor v. Rederi A/S Volo,* 374 F.2d 545 (3d Cir. 1967). Moreover, questions of law may be resolved by summary judgment. *Mellon Nat'l Bank and Trust Co. v. Nationwide Mutual Ins. Co.,* 32 F.R.D. 365, 366 (W.D.Pa.1962).

### II. *Facts*

By now this Court and all the parties are intimately familiar with the facts of this case. For those not familiar reference is made to *Paton v. LaPrade,* 524 F.2d 862, 865–867 (3d Cir. 1975) and to my opinion filed November 29, 1978, *Paton v. LaPrade,* 469 F.Supp. 773 (D.N.J.1978). Thus I will recapitulate only the most notable facts.

As part of a high school assignment for a course called "Left to Right," Lori Paton, a student at West Morris Mendham High School in New Jersey, wrote a letter which she inadvertently addressed to the Socialist Workers' Party, an allegedly subversive organization upon which the Government maintained mail surveillance. After the F.B.I. intercepted the Paton letter, it tried to determine whether she was engaged in subversive activity. An agent was sent to the local police department, the credit bureau, and to her high school to make inquiries. The field agent determined that Paton had written the letter as part of a high school project and was not involved in subversive activity. He therefore advised his superior to close administratively the file the F.B.I. had prepared on her. On June 13, 1973, Paton's attorney wrote J. Wallace LaPrade, Special Agent in charge of the Newark office of the F.B.I., to inquire about the investigation of Paton. LaPrade responded by letter dated July 6, 1973, stating that "no investigation" had been conducted. Plaintiff claims this answer was an intentionally deceitful and misleading statement intended to discourage or hinder her in seeking legal redress.

## A. LaPrade's Liability for Acts Alleged.

At the outset I note that the identical issue was argued before Judge Coolahan, October 11, 1977, who denied summary judgment as to LaPrade without prejudice. Nevertheless I have considered these arguments anew.

■ LaPrade contends that any theory of recovery against him must be based on "respondeat superior" as he was not personally involved in any of the alleged facts. The doctrine of *respondeat superior* is unavailable as a basis for imposing liability under § 1983;[1] there must be some showing of *personal responsibility. Duchesne v. Sugarman,* 566 F.2d 817, 830 (2d Cir. 1977); *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077, 1082 (3d Cir. 1976).

In *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), an action by various citizens against Philadelphia City officials for alleged police misconduct of a pervasive pattern, the Supreme Court held there must be some causal connection between the acts which "subjects . . . or causes to be subjected" (42 U.S.C. § 1983) the deprivation of civil rights and the supervisory personnel who are named defendants. In *Rizzo* no such causal connection was found.

■ There are several methods to create the requisite causal connection between a supervisor and his subordinates. The greater the duty a supervisor has to control those employees who actually committed the violation, the less specific knowledge of the offending conduct the supervisor will be required to have. *Santiago v. City of Philadelphia,* 435 F.Supp. 136, 152 (E.D.Pa.1977). The existence of general policies and practices within an organization can create a

*constructive knowledge* on the part of the supervisor of the alleged constitutional deprivations. *Id.; Holland v. Conners,* 491 F.2d 539, 541 (5th Cir. 1974). As the Court explained in *Duchesne v. Sugarman, supra*:

> Unlike *Rizzo,* in the present case, a jury *could find* the individual appellees liable, not on the theory that these supervisory officials may be held responsible for the acts of agents which were negligent or contrary to instructions, but rather on the theory that it was the appellees *own* conduct which resulted in the constitutional violations. It is not necessary for § 1983 liability that the appellees directed any particular action with respect to these specific individuals, only that they *affirmatively* promoted a policy which sanctioned the type of action which caused the violations. In short this is not a case of indifference, that is, a failure to act in the face of misconduct by subordinates, but is rather a case of affirmative policymaking which may have caused the misconduct. (emphasis in original)

566 F.2d at 831. Causation can be established from the fact that the subordinate's action is an implementation of the policies or practices endorsed by the supervisor. *Santiago, supra,* 435 F.Supp. at 152.

■ On the record before me it is clear that there is a question of fact as to what role LaPrade played in the implementation and overseeing of policies and practices which led to Ms. Paton's alleged injury. As such, defendant's motion for summary judgment as to the first cause of action[2] is denied.

## B. *The Legal Propriety of Damages for Embarrassment and Notoriety.*

Defendants argue that embarrassment and notoriety are not proper grounds for

---

1. Although this is not an action pursuant to 42 U.S.C. § 1983, there is now a recognized right of action against federal officers that is analogous to the right of action one would have against a state official under 42 U.S.C. § 1983. *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *U. S. ex rel. Moore v. Koelzer,* 457 F.2d 892 (3d Cir. 1972); *Gissen v. Tackman,* 401 F.Supp. 305, 309 (D.N.J.1975) (Whipple, J.), vacated on other grounds, 537 F.2d 784 (3d Cir. 1976).

2. I think it only fair to address a parenthetical argument defendant LaPrade puts forth in footnote 4 of his brief. Insofar as LaPrade is mentioned in paragraph three (3) of the amended complaint as the superior officer of the defendants who were involved in the alleged injury to plaintiff, I find this to be adequate pleading within the ambit of Fed.R.Civ.P. 8(a).

awarding damages. Moreover, if emotional distress attaches to plaintiff's claim there was no attendant physical suffering and as such no damages.

The Third Circuit addressed this issue in their 1975 opinion:

> The difficulty of quantifying these injuries is no bar to the bringing of a lawsuit for damages. In a suit for an intentional violation of constitutional rights, it has been held in a § 1983 case that "nominal damages are proved by proof of deprivation of a right to which the plaintiff was entitled." *Basista v. Weir*, 340 F.2d 74, 87 (3d Cir. 1965). Compensatory damages may be awarded under certain circumstances although no out-of-pocket expenses are shown. *Seaton v. Sky Realty Co.*, 491 F.2d 634 (7th Cir. 1974); *Donovan v. Reinbold*, 433 F.2d 738, 743 (9th Cir. 1970). Also punitive damages may be awarded in some situations for a malicious and wanton disregard for a plaintiff's constitutional rights even in the absence of actual damages. *Fisher v. Volz*, 496 F.2d 333, 346–48 (3d Cir. 1974); *Basista v. Weir*, 340 F.2d 74, 87 (3d Cir. 1965). On this abbreviated record, it is not appropriate to decide whether plaintiff Paton could possibly be entitled to damages, and such issues should not be addressed unless and until the district court is faced with a sufficient record on remand. In view of Paton's allegations of injury and the applicable law of damages in civil rights cases, we cannot sustain the district court's entry of summary judgment denying Paton's claim for damages.

524 F.2d at 871–872. Presently the record before me is not sufficient to rule out the possibility of damages. The type and amount of damages remains a question for the trier of fact.

**3.** The present day 42 U.S.C. § 1985(3) had its basis in the Civil Rights Act of 1871, 17 Stat. 13 § 2 often referred to as the Ku Klux Klan Act.

**4.** Nowhere is there a requirement that the *words* "invidious, class-based, animus, etc." be used in the pleading. The requirement is that

■   Additionally defendants claim that any and all notoriety was caused by plaintiff herself, or her teachers and parents heralding the news of the investigation. While this contention is not so "ludicrous" as plaintiff deems, a person is nevertheless, responsible for the natural consequences of his actions. *Cf. Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Thus whether the defendants' investigation was the "legal" cause and the "proximate" cause of plaintiff's damage, if any, remains a question for the trier of fact.

### C. *Legal Sufficiency of the Conspiracy Claims Under 42 U.S.C. § 1985.*

The seminal cause of *Griffin v. Breckenridge*, 403 U.S. 88, 102–103, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) prescribed the requisites of "coming within" 42 U.S.C. § 1985(3).[3] The complaint must allege that the defendants did:

> (1) "conspire or go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

*Griffen, id.*, 403 U.S. at 102–103, 91 S.Ct. at 1798, 1799, citing the 1985 statute. The Court further elucidated:[4]

> . . . The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that

*facts* sufficient to constitute such an "animus" be pleaded. The complaint in this action satisfies this requirement as Judge Coolahan noted in his October 22, 1976 opinion (pp. 22–24) allowing amendment of the complaint to include the § 1985(3) claim.

there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. (emphasis in original) (footnote omitted)

Griffen, id., 403 U.S. at 102, 91 S.Ct. at 1798.

█ It should be noted that summary judgment is frowned upon in conspiracy cases. As Justice Black noted in his concurrence in *Adickes v. S. H. Kress & Co.*, (a civil rights action pursuant to 42 U.S.C. § 1983), 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970):

The existence or nonexistence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should decide. In this case petitioner may have had to prove her case by impeaching the store's witnesses and appealing to the jury to disbelieve all that they said was true in the affidavits. The right to confront, cross-examine and impeach adverse witnesses is one of the most fundamental rights sought to be preserved by the Seventh Amendment provision for jury trials in civil cases. The advantages of trial before a live jury with live witnesses, and all the possibilities of considering the human factors, should not be eliminated by substituting trial by affidavit and the sterile bareness of summary judgment. "It is only when the witnesses are present and subject to cross-examination that their credibility and the weight given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark

of 'even handed justice'" *Poller v. Columbia Broadcasting*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). 398 U.S. at 176, 90 S.Ct. at 1618.

█ Defendants argue that they did not engage in a conspiracy nor was the letter[5] signed by defendant LaPrade the product of a conspiracy. Defendants argue facts on this point, something that will be left for the trier of fact. Further, in consideration of the "single-entity" theory upon which defendants seek to avoid liability on the basis that they were individuals acting as representatives of a single entity, the FBI, reference is made to *Novotny v. Great American Federal Savings & Loan Association*, 584 F.2d 1235, 1258 n. 122 (3d Cir. 1978), *cert. granted* —— U.S. ——, 99 S.Ct. 830, 59 L.Ed.2d 30 (1979). There when a corporation commits a substantive crime the officers and directors who cause it to so act may be guilty of criminal conspiracy.

Next defendants argue that they were not motivated by an invidious discriminatory animus, one of the elements of a § 1985(3) action. Again I will point out that to allege invidious, class based discrimination one need not use the words "invidious, class-based discrimination", *see* note 5, *supra.*

█ Defendants urge me to determine that, as a matter of law, a FBI investigation cannot constitute invidious class-based discrimination. While I am of the opinion that a *good faith investigation*[6] could not constitute such discrimination, the facts alleged by plaintiff and inferentially supported by the record are such as to not qualify as a good faith investigation. A trier of fact could indeed find the requisite

---

5. The letter complained of is part of an alleged "cover-up" of the FBI's investigation of Ms. Paton.

Dear Mr. Askin:

Your letter dated June 13, 1973, made inquiry on behalf of Ms. Lori Paton and Mr. William Gabrielson.

After carefully reviewing the facts in this matter, I have concluded there was no impropriety on the part of investigative personnel of this Bureau and that the FBI has no knowledge of any letter Ms. Paton may have sent to the Socialist Labor Party. You may be assured that Ms. Paton is not the subject

of an investigation by this Bureau and that the FBI does not maintain a general policy of surveillance of correspondence of political groups such as the Socialist Labor Party.
Very truly yours,
s/
J. Wallace LaPrade
Special Agent in Charge

6. *See, Reporters Committee for Freedom of the Press v. American Telephone and Telegraph*, 192 U.S.App.D.C. 376, 593 F.2d 1030 (1978) and my discussion 469 F.Supp. 781–782 of the November 29, 1978 *Paton* opinion.

invidious, class-based [7] discriminatory animus, and I must therefore present the issue to the trier of fact.

■ Finally defendant alleges that plaintiff was not deprived of having and exercising any right or privilege afforded a citizen of the United States. It is difficult to separate this argument from one which analyzes the injury to the plaintiff. Ultimately, the amount and extent of the injury,[8] if any, to the plaintiff must be determined by a trier of fact. Two recent cases have indicated, as a matter of law, that with *proper proof* damages may be recovered for First Amendment and civil rights violations. *Carey v. Piphus*, 435 U.S. 247, 263–264, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1975); *Birnbaum v. U. S.*, 436 F.Supp. 967, 989 (E.D.N.Y.1978), *aff'd.* 588 F.2d 319 (2d Cir. 1978).

In conclusion defendants motion for summary judgment on the § 1985(3) claim must be denied.

### D.  *Qualified Immunity.*

Defendants argue that they are immune from civil liability under the principle of qualified immunity. The Third Circuit had an opportunity to comment on this very issue in their 1975 opinion:

The question of defendants' immunity or good faith defense against a suit for money damages also may turn on factual determinations such as the type of discretion exercised and the defendants' good or bad faith. We again look for guidance to § 1983 cases.

*Paton v. LaPrade, supra*, 524 F.2d at 872. In the intervening years the issue of immunity has been discussed by the Supreme Court in several cases and discovery has adduced more facts which I may consider. For reasons discussed below summary judgment as to the issue of qualified immunity must be denied.

The problem of balancing the immunity of officials acting in believed good faith and the "promise" of the Civil Rights Act was addressed in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). There the court determined that an official "is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [complainant] affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the [complainant]." *Wood v. Strickland, supra*, 420 U.S. at 322, 95 S.Ct. at 1001. Similarly in a case arising out of the Kent State disturbances in May 1970, Chief Justice Burger pointed out that:

. . . qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for

---

7. In Judge Coolahan's October 22, 1976 opinion (*see* note 5, *supra*) he expressed doubt that plaintiff could establish a class of all persons who write to political organizations which are under surveillance. Since then case law in this Circuit has indicated that a § 1985(3) action may lie if the complainant is injured as a collateral result of animus against a group. In *Novotny, supra*, 584 F.2d 1235, 1253–1259 Judge Adams held that the male plaintiff's § 1985(3) claim against defendant Great American Federal Savings & Loan (GAF) was proper even though the discrimination complained of was against women. The nexus was that plaintiff,

even though a man, had advocated the position of a female employee alleging sexual discrimination, and as a result Novotny was terminated by GAF.

In the case at bar plaintiff contacted the SWP who were allegedly the targets of the § 1985(3) conspiracy. As a result plaintiff's rights and privileges were allegedly infringed.

8. Injury to the plaintiff can include deprivation of constitutional rights and privileges as well as "true injury". *Colon v. Grieco*, 226 F.Supp. 414, 418 (D.N.J.1964).

acts performed in the course of official conduct.

*Scheuer v. Rhodes,* 416 U.S. 232, 247–248, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974).

The *Scheuer-Wood* qualified immunity analysis has been followed in recent decisions by the Supreme Court. In *Procunier v. Navarette,* 434 U.S. 555, 561–562, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) the Court held that absent a showing of malice an official would not be held liable in damages under 42 U.S.C. § 1983 unless the constitutional right he was alleged to have violated was clearly established at the time the violation occurred. More recently in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) the Court, applying the reasoning of *Bivens v. Six Unknown Fed. Narc. Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), held that federal officials enjoy no greater zone of immunity protection when they violate federal constitutional rights than do state officials.

[redacted] The record before me presents genuine issues of material fact as to whether defendants' investigation of the SWP, and subsequently, the plaintiff, was in good faith. There are exhibits before me from which a trier of fact could reasonably believe that the defendants and other FBI officials acted with the malicious intent to deprive plaintiff of her constitutional rights. As a result it is not within my discretionary powers to grant defendants summary judgment on the issue of qualified immunity.

E. *The Propriety of Equitable Relief.*

[redacted] Defendants argue that neither declaratory relief nor an injunction are proper remedies for this court to exercise. I am inclined to agree with the plaintiff that the issue of remedies is better resolved after the trier of fact has ruled on substantive issues. However, much of the relief plaintiff has requested has been acceded [9] to by the defendants and/or the FBI, e. g. expungement of plaintiff's FBI file, halt of SWP investigation, and new criteria for domestic/national security searches.[10] Moreover, I take notice that there is active litigation in the Southern District of New York involving the investigation of the SWP. Defendants' motion for summary judgment as to equitable relief is therefore denied but argument as to this issue may be heard after trial if necessary.

F. *The Constitutionality of the Field Investigation.*

Both parties have moved for summary judgment on the issue of the constitutionality of the field investigation of plaintiff Paton. My previous opinion in this case [11] dealt with the constitutionality of the mail cover through which the FBI ascertained plaintiff's identity. The slip opinion held that a mail cover premised upon protection of national security violated First Amendment rights in that it was vague and overbroad.

[redacted] The mail cover and the field investigation are interwoven and interrelated. One important aspect of my mail cover opinion was that if the mail cover had been based on a *good faith criminal investigation* my holding would have been quite different.[12] Indeed the overall relation of the mail cover, the field investigation, and the underlying investigation of the SWP is one of the closest order. The case of *Wong Sun v. U. S.,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), though a criminal case, is illustrative of the type of connection I

**9.** But I note, as plaintiff's counsel pointed out in oral argument, the FBI's interior office policies can be changed at some future date.

**10.** The Postal Service, though they consider the mail opinion "erroneous", recently proposed amending the mail cover provision 39 C.F.R. § 233.2 to more narrowly define "national security". 44 Fed.Reg. 24111, 24114, April 24, 1979.

**11.** The November 29, 1978 opinion, 469 F.Supp. 773.

**12.** 469 F.Supp. at 781–782. *See also Reporters Committee for Freedom of the Press v. A. T. & T.,* 192 U.S.App.D.C. 376, 593 F.2d 1030 (1978).

perceive in the case at bar. In *Wong Sun* statements made by the defendant at an illegal arrest were suppressed as were items which were the direct result of the suppressed statements. The Court analogized the illegal arrest as the "poisonous tree" of which the "fruit" (evidence derived from the illegal arrest) acquired a poisonous taint.[13] Similarly, the field investigation which derived from an unconstitutional mail cover, acquires an unconstitutional taint. Just as a house whose foundation is crumbling will eventually fall, so must the field investigation whose foundation is the unconstitutional mail cover.

Defendant's claim that the SWP investigation was part of a good faith criminal investigation [14] and thereby attempt to attenuate the unconstitutional taint. Unfortunately it is a bit late for defendants to try to validate the mail cover of the SWP.

Finally, I note that the field investigation itself could have been handled better. Upon learning Paton's identity and reason for contacting the SWP the agent should have contacted her parents and briefly and cordially explained the nature and purpose of his investigation. This would have removed the aura of mystery and surreptitiousness that the investigation created.

For the foregoing reasons summary judgment as to the constitutionality of the field investigation is granted in favor of the plaintiff.

For ease and clarity in the resolution of an order I shall set out my rulings on each issue. Defendant LaPrade's motion for summary judgment as to the first cause of action is denied. Defendants' motion concerning striking the request for damages for embarrassment and notoriety is denied. Defendants' motion for summary judgment on the conspiracy, 42 U.S.C. § 1985(3), claim is denied. Defendants' motion for summary judgment on the grounds of qualified immunity is denied. Defendants' motion for summary judgment on the issue of equitable relief is denied. Defendants' motion for summary judgment on the constitutionality of the field investigation is denied. Plaintiff's motion for summary judgment on the issue of the constitutionality of the field investigation is granted.

Counsel for the plaintiff will prepare an appropriate order within two weeks.

---

13. The "fruit of the poisonous tree". *Wong Sun v. U. S., supra,* 371 U.S. at 488, 83 S.Ct. 407.

14. This excerpt from defendants' statement of material facts explains the supposed ground upon which the SWP investigation is based:

The investigation of the Socialist Workers Party was commenced in October, 1940, and was terminated on September 13, 1976. The investigation appears to have been premised upon the criminal provisions set forth in Title I of the Alien Registration Act of 1940, 54 Stat. 670, which prohibited advocation of the overthrow of any government in the United States by force or violence and conspiracy to overthrow any government in the United States by force and violence. Additionally, there was investigative activity premised on possible criminal violation resulting from the storage of weapons and conduct of military drills by a para-military organization. While not necessarily articulated, at various times the follow-

ing criminal statutes also formed a basis for the investigation:

18 U.S.C. § 1116, Protection of Foreign Officials and Official Guests of the United States;

18 U.S.C. §§ 231–233, Civil Disorders;

18 U.S.C. §§ 2101–2102, Riots;

18 U.S.C. §§ 2152–53, Sabotage;

18 U.S.C. §§ 2381–2382, Treason and Misprision of Treason;

18 U.S.C. §§ 2383–2385, Rebellion, Seditious Conspiracy, Advocating Overthrow of Government;

18 U.S.C. § 2386, Registration of Certain Organizations;

18 U.S.C. §§ 2387–2388, Activity Affecting Armed Forces—Sedition;

18 U.S.C. §§ 792–798, Espionage;

22 U.S.C. §§ 611–621, Foreign Agents—Propaganda.

The thirty-six years of investigation of the SWP produced no criminal indictments.